# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00028-SCT

*KENNETH LEON DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/4/2001 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: DAVID PAUL VOISIN |
| |     ROBERT M. RYAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | AFFIRMED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Kenneth Leon Davis was convicted of capital murder in the shooting death of Bobby Joe Biggert. A Hinds County jury sentenced him to death. His direct appeal was affirmed by this Court in 1991. ***Davis v. State***, 660 So. 2d 1228 (Miss. 1995). The United States Supreme Court denied certiorari, ***Davis v. Mississippi***, 517 U.S. 1192, 116 S.Ct. 1684, 134 L.Ed.2d 785 (1996), and rehearing. ***Davis v. Mississippi***, 518 U.S. 1039, 117 S.Ct. 7, 135 L.Ed.2d 1102 (1996).

¶2. Thereafter, Davis sought post-conviction relief by filing a petition in the Mississippi Supreme Court. This Court granted Davis permission to file his petition for post-conviction relief in the Circuit Court of Hinds County. Davis was allowed to present several specific claims of ineffective assistance of counsel. All other claims were dismissed. After a hearing, the trial judge determined that Davis had not shown any constitutional deprivation of effective assistance of counsel. The request for post-conviction relief was denied. Davis's appeal from that order is before the Court.[1]

¶3. After a full review of the record at trial, the transcript of the hearing on the post-conviction relief proceedings and the briefs filed in this matter, the Court finds that Davis received effective assistance of counsel and that the petition for post-conviction relief was properly denied.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4. The facts are thoroughly set out in **Davis v. State**, 660 So. 2d 1228 (Miss. 1995). At approximately four o'clock in the afternoon on February 23, 1989, Tammy Slaton was at work at Dr. Duck's Pawn Shop in Jackson. Kenneth Davis entered the store, pointed a pistol at her, and demanded that she give him the store's cash. Davis also demanded the keys to Slaton's car which was parked outside. Slaton gave Davis approximately $400 in cash and her keys. Davis then forced her at gunpoint into a storeroom where he tied her hands with a piece of bed sheet. While Davis was with Slaton in the storeroom, Bobby Joe Biggert, an off-duty policeman, entered the pawnshop as a customer. Biggert found no one in the main part of the store and came into the storage area looking for assistance. Davis immediately confronted Biggert with the pistol. Shortly thereafter, Davis fired one shot from the small caliber pistol. The shot struck Biggert in the head, and Biggert fell to the ground. Slaton asked Davis not

---

[1]Davis has also filed motions to amend his post-conviction pleadings and other motions. The only matters addressed herein are those raised in the appeal from the circuit court's denial of Davis's petition for post-conviction relief. The other motions will be decided in due course.

to hurt her, and Davis told her that he was not going to hurt her. He fled the scene in Slaton's 1980 maroon Camaro. Slaton was able to untie her wrists and call for help. Emergency personnel rushed Biggert to the hospital but his wound proved to be fatal. Biggert died two days after the shooting.

¶5. Law enforcement authorities immediately began searching for the maroon Camaro. The car was found in a wooded area near Lake Dockery in the Byram area. A search of the area around the location of the automobile was conducted. Officers found a .22 caliber pistol, a box of .22 caliber ammunition, a hunting knife, a knife scabbard, a pair of faded red overalls, a denim jacket, a baseball type cap, and a hood. One identifiable fingerprint was found on the knife. Authorities matched that fingerprint to a print of Davis's which the F.B.I. had on file. The pistol was traced through A.T.F. records to a house burglary in Jackson which occurred the day before Biggert's shooting. After further investigation of the burglary and after determining that Davis's fingerprint was on the knife found near the stolen car, officers named Kenneth Davis as a suspect in both the house burglary and the pawn shop shooting. Pursuant to a warrant, officers performed a search of Davis's trailer in Rankin County. Inside the trailer, officers found a white bed sheet with a floral pattern. Part of the sheet had been torn or cut away. The floral patterned sheet found in the trailer matched the piece of sheet with which Slaton's hands had been tied. Officers also found items stolen in the home burglary in Davis's trailer.

¶6. Police officers canvassed businesses in the area around the pawn shop. At trial, two employees of the Dairy Queen, located across the street from the pawn shop, testified that Davis had been in the restaurant immediately prior to the robbery. Two Dairy Queen customers also identified Davis and stated that Davis had been in the Dairy Queen shortly before the shooting. Additionally, a motorist on the street outside the pawn shop testified that he saw Davis cross the street in front of him and walk into Dr. Duck's.

3

Perhaps the most damaging testimony to Davis was Slaton's positive identification of him at trial as the robber and killer.

¶7.     Davis was convicted of capital murder and was sentenced to death. This Court affirmed the conviction and sentence. *Davis v. State*, 660 So. 2d 1228 (Miss. 1995). Pursuant to Miss. Code Ann.§ § 99-39-1 et seq., Davis sought post-conviction relief in this Court. By order entered on June 26, 1997, this Court granted Davis permission to pursue his petition for post-conviction relief in the trial court. An order of clarification was entered by this Court on September 11, 1997. In that order, this Court determined that Davis could present five specific claims of ineffective assistance of counsel in post-conviction proceedings. The Court determined that all other claims raised in the petition for post-conviction relief were barred.

¶8.     The Circuit Court of Hinds County held a hearing on Davis's petition for post-conviction relief in December of 2001. At that hearing, Davis presented claims that his trial and appellate attorneys had been ineffective. After the conclusion of the hearing, the trial court denied Davis's request for post-conviction relief, and this appeal ensued.

## ANALYSIS

¶9.     On appeal, Davis presents three issues related to his claim that he did not receive effective assistance of counsel. Davis was represented at trial and on appeal by William Kirksey and Merrida Coxwell. At the time of their representation of Davis, both attorneys had extensive criminal defense experience in both capital and non-capital cases.

¶10.    The standard for determining if a defendant received effective assistance of counsel is well established. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

4

relied on as having produced a just result." ***Strickland v. Washington***, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant must demonstrate that his attorney's actions were deficient *and* that the deficiency prejudiced the defense of the case. ***Id***. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." ***Stringer v. State***, 454 So. 2d 468, 477 (Miss. 1984), citing ***Strickland v. Washington***, 466 U.S. at 687. The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. ***Id.***

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

***Stringer***, 454 So.2d at 477; citing ***Strickland***, 466 U.S. at 689. Defense counsel is presumed competent. ***Washington v. State***, 620 So. 2d 966 (Miss. 1993).

> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Mohr v. State***, 584 So. 2d 426, 430 (Miss. 1991). This means a "probability sufficient to undermine the confidence in the outcome." **Id.** The question here is

> > whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. ***Strickland***, 466 U.S. at 695, 104 S.Ct. at 2068.

5

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988); *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So. 2d 1279, 1281 (Miss. 1987); *Mohr v. State*, 584 So. 2d 426 (Miss. 1991).

*Davis v. State*, 743 So. 2d 326, 334 (Miss. 1999), citing *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996).

¶11. Davis's claims of ineffective assistance of counsel are:

> **I. Trial counsel was ineffective in failing to "use an F.B.I. crime lab report to demonstrate that hair belonging to someone else, not petitioner, was found on items of clothing supposedly worn by the perpetrator."**

¶12. At trial, Slaton witnesses testified that the perpetrator of the robbery and homicide had been wearing faded red or orange overalls, a cap, and a hood. Several of the Dairy Queen witnesses and Joe Larimore, who had seen Davis on the street as he went into the pawn shop, also identified the red overalls, cap and hood. Those three items were discovered by law enforcement officers in the wooded area near where Slaton's Camaro was found. All three were submitted to the FBI for hair and fiber analysis. The FBI report notes that "No hairs like the known hairs of the suspect . . . were found on or in specimen Q52 [the hood] . . . No hairs of value for comparison purposes were found on the Q53 cap . . . [N]o hairs were found on Q51 [the coveralls]."

¶13. The implication from the report is that no hairs at all were found on the cap or the coveralls but that a hair or hairs that did not match Davis's hair were found on the hood. Davis now maintains that his attorneys at trial were ineffective in failing to point out to the jury that someone else's hairs apparently were found on the hood.

¶14.    At trial, one of Davis's attorneys cross-examined a Jackson homicide detective about the F.B.I. hair report:

> Q.    So the hood, the baseball cap, and the pair of coveralls was submitted to the FBI? That's what this report says?
> A.    Yes.  That's what that one says.
> Q.    And the request was for -- for you or for the bureau to do a hair and fiber examination; is that correct?  That's what these reports say; isn't it?
> A.    That's correct.
> Q.    Is it safe to say, or since you and I do this a lot, that when you make these requests, Mr. Crisco, is what they do is they take the known hair and -- known hair from a defendant, examine any fibers or hairs that they get from the evidence submitted, and see if there's any matching or similar to character -- characteristics?  Isn't that what they do?
> A.    That's correct.
> Q.    And then if there is a match they will send you back a report saying:  On known sample K1, being a hat, or whatever the item is, we find that this -- this item contains hair of a similar character as that of the suspect provided as known exhibit two?
> A.    Yes.  Yes.
> Q.    That's basically what they do?
> A.    Correct.
> Q.    Did you ever receive any report from the Bureau, FBI Bureau, Federal Bureau of investigation, in Washington, D.C., telling you that there were any hairs from these items that matched that of the Defendant in this case, to your knowledge?
> A.    To my knowledge, we did not receive a report from the FBI in regards to that information.

Davis's trial attorney adequately demonstrated to the jury that no hair found on the hood matched Davis's hair.  Davis claims, however, that his attorneys failed to elicit testimony from the witness that there were hairs on the hood that belonged to someone other than the defendant.

¶15.    Both of Davis's trial attorneys were questioned on this issue at the post-conviction relief hearing. Both testified that they felt that the cross-examination had been sufficient and that any issue regarding hair on the hood, cap, or coveralls had been adequately covered.  We agree.  Exculpatory information was imparted to the jury through the defense's examination of the witness in question.  The F.B.I. report was admitted into evidence and was available for the jury's review.  The jury was informed that Davis's hairs

7

were not found on any of the items submitted to the F.B.I. for analysis. Although in hindsight, the attorneys might have been well advised to ask the subsequent questions about other persons' hairs, we do not find that the failure to ask those questions amounted to ineffective assistance of counsel. Perfect representation in hindsight is not the standard, and the accused is not entitled to errorless counsel. *Stringer v. State*, 454 So. 2d at 476. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, --- U.S. ----, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003), citing *Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

¶16.    To establish ineffectiveness, Davis must show that his attorneys' representation fell below an objective standard of reasonableness. To establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), citing *Strickland*, 466 U.S. at 688, 694. The question is whether the defendant's attorneys made errors so serious that the attorneys failed to function as "counsel" guaranteed by the Sixth Amendment and that the deficiencies in the representation actually prejudiced the defense such that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687.

¶17.    After hearing the testimony offered by Davis at the hearing on the petition for post-conviction relief, the trial court determined that the attorneys' performance had not been deficient and that Davis had suffered

no prejudice. This Court reviews a trial court's findings on ineffective assistance of counsel on a clearly erroneous standard. *State v. Pittman*, 744 So. 2d 781, 786 (Miss. 1999).

¶18.  Davis's attorneys were presented with a difficult case to defend. Their client had been positively identified by Slaton. Five other eyewitnesses placed Davis near the scene of the crime shortly before the crime occurred. The piece of floral bed sheet used to bind Slaton's hands during the robbery came from a sheet in the trailer where Davis was living. Davis's fingerprint was found on the knife discovered near Slaton's abandoned car. Items taken in the same burglary in which the murder weapon was stolen were found in Davis's house. Under the totality of the circumstances and after reviewing the entire trial transcript, we find that Davis has not shown that his trial and appellate attorneys were ineffective.

¶19.  We find that under no objectively reasonable basis could it be shown that Davis was not afforded effective assistance of counsel in relation to the hair and fiber evidence. The dectective was cross-examined vigorously by Davis's attorneys. Through the F.B.I. report, the attorneys showed that no hair of Davis's was found on any item of clothing in evidence. We agree with the trial court and find that the representation received by Davis here was more than adequate under the standards set out above.

> **II.   Davis's trial attorneys were ineffective in failing to adequately object to false evidence concerning the aggravating circumstance that "the capital offense was committed by a person under sentence of imprisonment."**

¶20.  During the sentencing phase, the State attempted to prove several statutory aggravating factors. The State offered evidence that Davis had been on parole and under sentence of imprisonment at the time of Biggert's killing. The State offered proof that Davis had been convicted of two counts of burglary in Louisiana in 1983. The State also showed that Davis had been convicted of burglary in Scott County in 1985. Finally, the State showed that Davis had convictions for possession of a concealed firearm by a

9

convicted felon and felony escape from Forrest County in 1985. The State alleged that Davis was still under parole conditions for each of those five convictions and thus met the requirements for the aggravator of being under a sentence of imprisonment. The jury found that the murder had been committed while Davis was under sentence of imprisonment and that aggravating factor was used as a basis for the penalty of death. Davis now claims that he should not have been considered to have been on parole for the two Forrest County convictions for aggravator purposes and that his attorneys did not sufficiently contest that issue at trial and on appeal.

¶21.    During the sentencing phase, the State called the Assistant Director for the Louisiana Division of Probation and Parole who testified unequivocally that Davis was on parole in Louisiana for the two burglary convictions he had there. The State also called a Field Officer with the Mississippi Department of Corrections who testified that Davis had been paroled in 1988. He was paroled after serving a portion of the three consecutive sentences he was then serving.

¶22.    Davis faults his attorneys for failing to make an adequate objection to the State's use of the two Forrest County convictions. He claims that the two year sentence for carrying a concealed weapon and the three year sentence for escape were expired by the time of the crime and that they should not have been presented to the jury as a basis for a finding that the killing was done while Davis was on parole. The attorneys actually objected repeatedly to any use of the Forrest County sentences as support for the "under sentence of imprisonment" aggravator. They then raised that issue on appeal. In the appellant's brief in the direct appeal, his attorneys argued that:

> Mr. Davis was not on parole for escape, i.e., not "under sentence of imprisonment for escape" . . .  In objecting to the admission of this conviction the defense illustrated that Davis had served the time on both the three-year sentence for escape and a consecutive two-year sentence [the carrying a concealed weapon conviction] handed down the same day. The defense argued that because Davis was sentenced to these charges prior to the

10

seven-year sentence from Scott County, he would serve those sentences before he started serving the seven-year sentence. The trial court overruled this objection. That ruling was clearly erroneous. *Milam v. State*, 578 So. 2d 272 (Miss. 1991) (where person is sentenced to consecutive terms, "imprisonment on the second, or subsequent conviction, shall commence at the completion of the service of the term for the preceding conviction").

¶23.    The issue therefore was substantially raised in the direct appeal by Davis's attorneys. This Court explicitly found that the State's commenting on the escape conviction was not improper. *Davis*, 660 So. 2d at 1228-29.

¶24.    At trial, Davis's attorneys made specific objections to the use of the Forrest County convictions. Those objections were overruled. The issue was raised on appeal but this Court affirmed the conviction and sentence. Davis maintains that his attorneys should have offered additional argument on purportedly relevant cases and statutes. Again, mere hindsight is insufficient to establish a claim of ineffective assistance. The fact remains that the claim was raised repeatedly before the circuit judge and was brought before this Court on appeal. We find no ineffective assistance of counsel where the attorneys raised the claims at trial and on appeal.

¶25.    Additionally, even if the Forrest County convictions were improperly used as support for the aggravating circumstance of commission of the crime while under sentence of imprisonment, the State still more than amply produced evidence that Davis was in fact under sentence of imprisonment when he shot and killed Bobby Joe Biggert. It was unrefuted that Davis was still on parole in Louisiana at the time of the crime. He also was on parole from his Scott County burglary conviction. The "while under sentence of imprisonment" aggravator applied even if the escape and concealed weapon convictions had not been used. The jury had more than sufficient proof to find that that aggravating circumstance existed even in the absence of the escape and concealed weapon convictions.

¶26. Finally, Davis's jury found two separate aggravating circumstances. The jury found that the capital murder was committed intentionally while Davis was engaged in the commission of armed robbery or flight after committing the armed robbery and that the capital murder was committed for pecuniary gain. In *McGilberry v. State*, 843 So. 2d 21, 29 (Miss. 2003), this Court held that "[i]f one aggravator is found to be invalid, we are authorized to reweigh the remaining aggravators against the mitigating circumstances and affirm, hold the error to be harmless, or remand for a new sentencing hearing. Miss. Code Ann. § 99-19-105(5)(b) (Rev. 2000)." Here, even if the aggravating circumstance related to commission of the crime while under sentence of imprisonment were discarded, the Court finds that the sentence of death should be affirmed. The jury found that the killing occurred in the course of the pawn shop robbery and that the killing was done for pecuniary gain. Given the evidence at trial, those findings are unassailable. Even if the aggravating factor at issue were thrown out, after reweighing the remaining factors, the Court would affirm Davis's death penalty. We find no error here.

### III.     Conflict of interest.

¶27. William Kirksey and Merrida Coxwell represented Davis at trial and on appeal. Bobby Delaughter, Assistant District Attorney for Hinds County, prosecuted the case for the State. Kirksey, along with another lawyer, had represented Delaughter in Delaughter's divorce proceedings. Davis claims that Kirksey represented him while under a conflict of interest and that he is entitled to a new trial with new counsel.

¶28. Kirksey testified at the post-conviction relief hearing that Davis had been informed of Kirksey's representation of Delaughter in the divorce case and that Davis had voiced no objection to continued representation by Kirksey. While there was no on-the-record waiver by Davis of any conflict, Kirksey's testimony that Davis was informed about the nature of Kirksey's relationship with Delaughter was fully

12

explained to Davis and that Davis had posed no objection was not contradicted at the post-conviction relief hearing. Kirksey also testified that another attorney was primarily responsible for handling Delaughter's divorce. Kirksey testified that the fact that he knew Delaughter and had represented him is "never going to change what I do inside the rail. My loyalty is to the oath I took and to do the best I could do inside the rail for my client. And I, quite frankly, don't care who's on the other side period . . . If anything, my knowledge of Bobby Delaughter would have aided and assisted me in the defense of Kenny Davis because I anticipated what Bobby Delaughter might do."

¶29.    Judge William Coleman, former Hinds County circuit judge who presided over Davis's trial, testified in the post-conviction proceedings that Delaughter and Kirksey were often on opposing sides in criminal trials and that he had not observed any "pulled punches" from either lawyer. Judge Coleman testified that in his opinion "Mr. Kirksey wanted to win every case he walked in in the courtroom."

¶30.    The United States Supreme Court has stated that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. at 692, 104 S.Ct. 2052 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

¶31.    In *Simmons v. State*, 805 So. 2d 452 (Miss. 2001), one of the defendant's attorneys had apparently represented one of the State's witnesses and that witness's father in unrelated matters prior to Simmons's trial. This Court held that "[t]here is no evidence in the record to suggest that defense counsel acted in some manner other than capabl[y]. *Id*. at 480.

¶32.    In *Simmons*, even though there might have been a facial conflict of interest, this Court found that there had been no showing of any ineffective assistance of counsel. The defendant there failed to present any evidence that his defense had been harmed by the purported conflict. We make the same finding here.

13

A thorough review of the trial record reveals that Davis received zealous representation from Kirksey and Coxwell. There is nothing in the record which indicates a lack of full loyalty to Davis and his defense. Davis has not shown that his defense suffered any prejudice whatsoever as a result of Kirksey's representation of Delaughter in Delaughter's divorce proceedings. As discussed above, the evidence against Davis was close to overwhelming. The victim of the robbery testified that Davis had done it. The strip of sheeting used to tie Slaton's hands matched the sheet in Davis's trailer. Five eyewitnesses saw Davis in the area near the time of the crime. As there is absolutely no resulting prejudice, the claim for relief based on the conflict of interest is without merit.

## IV.    The trial judge's rulings.

¶33.    Davis complains that various trial court rulings during the post-conviction proceedings unfairly limited his right to seek relief. He primarily complains that the trial judge denied his attempts to broaden the scope of the proceedings and that the trial judge did not allow his post-conviction attorneys sufficient time in which to present and prepare for the hearing on his post-conviction petition. He admits in his brief that those rulings do not entitle him to any relief. With that in mind, we treat this issue somewhat cursorily.

¶34.    This Court remanded this matter for a limited hearing on five specific claims of ineffective assistance of counsel. The scope of the trial court's proceedings was therefore limited to matters specifically noted in this Court's order. Davis apparently abandoned two of those claims and pursued the three outlined above. The petitioner also sought to amend the petition in the trial court to include various issues related to *Batson v. Kentucky*, the seating of juror Margie Dill, ineffectiveness of counsel in failing to object to prosecutorial misconduct, and claims related to alleged duplicative aggravating factors. Those claims were not among the claims specifically authorized for hearing in this Court's order dated September 11, 1997. Some, if not all of those claims are presently before the Court in pleadings discussed in footnote one. This

14

Court finds that the trial judge did not err in declining to allow Davis to amend his petition to add new claims for relief. This Court's prior order explicitly limited the scope of the lower court proceedings to five specific claims. The trial court had no jurisdiction to address any claims outside those specifically addressed in this Court's remand order. See *Culberson v. State,* 456 So. 2d 697 (Miss. 1984). The trial court therefore did not err in declining to broaden the scope of the hearing or to allow a proffer on the proposed new claims. Davis apparently recognized that the proper forum to file those amended claims was this Court. He filed a request to pursue amended post-conviction claims here. The new claims will be addressed in due course.

¶35. Davis claims that he was prejudiced by the State's failure to produce discovery in a timely manner. He admits, however, that the State's discovery was produced in March of 2001. The hearing was not held for another eight and a half months. Davis also maintains that he had insufficient time to review Kirksey's file but he makes no substantive showing of any prejudice whatsoever. The Court finds no prejudicial error here. Davis had more than sufficient time to review the discovery material prior to the hearing in December of 2001.

¶36. Davis also claims that the trial judge unfairly required him to proceed without sufficient time to prepare. The hearing was held on December 3, 2001. In October of 2000, C. Jackson Williams, the former director of the Office of Capital Post-Conviction Counsel was appointed to assist Davis, who initially elected to proceed pro se. In June of 2001, Williams was allowed to withdraw from his advisory counsel position after a Louisiana lawyer entered an appearance on behalf of Davis. On August 22, 2001, the Louisiana attorney was allowed to withdraw, and Williams was again appointed to represent Davis. At that time, the parties agreed that the hearing on Davis's petition for post-conviction relief would be held on December 3, 2001. At the hearing in August of 2001, Williams sought a hearing in late November or

15

early December. In accordance with Williams's wishes, the hearing was set for December. Williams and another attorney from the Office of Capital Post-Conviction Counsel appeared on behalf of Davis at the hearing on December 3, 2001. They sought additional time for the Court to consider their attempt to amend the petition and to prepare a proffer of proof after the amendment was denied. It does not appear that counsel for Davis at the post-conviction hearing requested additional time in which to prepare for the hearing itself. The only request was for additional time to prepare the proffer or to allow the State time to respond to the proffer. In light of the fact that counsel had been appointed three and a half months prior to the hearing after having already served a stint as counsel for Davis, that counsel for Davis agreed to the hearing date, and that counsel did not seek additional time to prepare for the hearing, the Court finds no error in the denial of the motion for continuance.

¶37. The bulk of the claim here is outside the scope of the remand order entered by this Court. Therefore, no relief is warranted. The Court finds no trial court error in the administration of the post-conviction proceedings.

## CONCLUSION

¶38. After a complete review of the trial and appellate record in the underlying case, the Court finds that Davis has made no showing that he received ineffective assistance of counsel. Davis was represented by two very capable attorneys who, from the face of the record, diligently and zealously represented their client in an uphill fight. The Court further finds no error in the trial court's decisions to decline to expand the hearing outside the explicit authorization provided in this Court's order and to deny Davis's request for continuance. Therefore, we affirm the circuit court's order denying post-conviction relief.

¶39. **AFFIRMED.**

16

**COBB, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  SMITH, C.J., AND DIAZ, J., NOT PARTICIPATING.**