# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00767-SCT

***WILLIAM GOLDEN, JR. a/k/a WILLIAM***
***HOWARD GOLDEN, JR.***

***v.***

***STATE OF MISSISSIPPI***

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2006 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. DANIEL HINCHCLIFF |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/20/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE SMITH, C.J., DICKINSON AND LAMAR, JJ.

## DICKINSON, JUSTICE, FOR THE COURT:

¶1. A defendant who raped two women at different places within a span of three hours was indicted, tried, and convicted of two counts of rape. The issues presented are: (1) the trial court's refusal to grant the defendant's request for separate trials for the two rapes; (2) the delay in swearing the jury until after evidence had been introduced; (3) sentencing by the trial court, rather than the jury; and (4) failure of the trial court to *sua sponte* order a mistrial for ineffective assistance of counsel. Finding no error, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     In the early morning hours December 31, 2004, Golden appeared unannounced at Jane Doe's ("Doe")[1] apartment at 2:00 a.m., and knocked on her door.  Startled, Doe awoke and went to the door to see who was there.  After confirming that the unannounced visitor was her third cousin, Golden, Doe admitted him into her apartment.  Golden told Doe that his parents would not let him into their home, and that he just needed a place to sit down until he could walk across town to his girlfriend's house.

¶3.     Doe did not feel comfortable with Golden in her house so late at night, so she offered to give him a ride.  Golden asked for a drink of water and then assured Doe that he was getting ready to leave.  He then received a call on his cell phone, which he did not answer.  Next, he jumped on top of Doe, who was sitting on her couch, and put a gun to her head and forced her to undress.  With her six-month-old child in the room,  he raped her.

¶4.     Afterward, Golden ordered Doe to go to the bathroom and clean herself up.  When Golden left, Doe first called her mother, then Golden's parents, and then the police.  Doe was taken to the hospital where a rape kit was performed.  Semen obtained from the rape kit matched Golden's DNA.

¶5.     Approximately three hours after Golden raped Doe, Sally Roe ("Roe")[2] was awakened by a knock at her door.  She peered out of her kitchen window to see who was at her door so early in the morning, when she heard Golden's voice.  Roe, a forty-nine-year-old friend of

---

[1] To protect the identity of the victim involved, this Court will refer to the victim by a fictitious name.

[2] To protect the identity of the victim involved, this Court will refer to the victim by a fictitious name.

2

Golden's family, rushed to open the door because she knew Golden. When Roe opened the door, she began to fuss at Golden, whom she had known since he was thirteen, because he was out so late at night. Golden told Roe that his parents would not let him into their house and he just wanted to lie down for a minute. Roe threw a blanket and pillow on her couch and told Golden he could lie down. Roe decided not to go back to sleep because she was afraid she would oversleep for work, so she returned to her bedroom and began to watch television. Golden asked Roe for some water, so she told him he could get some. Several minutes later, Golden rushed into Roe's room and jumped on top of her. He held a gun to her head and began to rip off her clothes. Golden then raped Roe. Afterwards, Golden asked Roe for some money, which she gave him, and then he left.

¶6. Roe, feeling ashamed and dirty, went into the bathroom and washed herself and her house with peroxide. She was afraid that Golden would attack others in her family, so she called her mother. Too embarrassed to tell her mother that she had been raped, Roe told her mother that Golden had robbed her, and instructed her mother that if Golden showed up at her house, not to let him in. Roe then went to the bathroom and washed herself again. She then called her sister and told her that Golden had raped her.

¶7. When she arrived at work that morning, Roe called Golden's father, who was her preacher, and asked him if he would come to her house that afternoon and talk to her. Golden's father went to Roe's home that afternoon, and shortly after he left, Golden called Roe to apologize for the rape. Roe initially did not report the rape to the police because she felt ashamed. Later that day, however, when she learned that Doe had been raped, she decided to call the police.

¶8. Golden was indicted and tried in the Circuit Court of Clay County, Mississippi, for two counts of forcible rape. A jury convicted him, and he was sentenced to serve forty years for each count, to run consecutively. Golden appeals his conviction.

## DISCUSSION

### I. Motion to Sever

¶9. Golden first argues that the trial court erred in overruling his motion to sever the two counts of rape. Specifically, Golden argues that trying the two counts together was highly prejudicial because his conviction of the first rape was supported by DNA evidence while the second one was not. The State argues, however, that the trial court properly overruled Golden's motion to sever after making a detailed finding, pursuant to *Corley v. State*, 584 So. 2d 769 (Miss. 1991). The State points out that the two counts were properly tried together because they were committed within hours of each other. Additionally, Golden knew both of the victims and used the same *modus operandi* to gain entry into each victim's home.

¶10. Mississippi Code Annotated Section 99-7-2 (Rev. 2007), which sets forth the requirements for trying two offenses together, states:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

Miss. Code Ann. § 99-7-2 (Rev. 2007).

4

¶11. In addition to the provisions of the statute (which is not today challenged), it is this Court's obligation to test judicial procedures within the parameters of the Constitution and this Court's rules. We thus turn to this Court's decision in *Corley*, which is applicable to the case at hand. In reviewing the trial court's ruling on a motion to sever, "this Court will give deference to the trial court's findings on review, employing the abuse of discretion standard," when the proper procedures are followed in accordance with *Corley*. *Corley*, 584 So. 2d at 772.

¶12. This Court noted that "[h]istorically, [we] prohibited multi-count indictments until 1986 when the Legislature adopted a multi-count indictment statute . . . ." *Corley*, 584 So. 2d at 772. The Court expressed its unwillingness to "allow separate and distinct offenses to be tried in the same criminal proceeding," noting the possible danger that a defendant might be convicted of an unproven count due to proof of guilt as to the other. *Id*. This Court further stated that "[w]hen the defendant raises the issue of severance, we recommend that a trial court hold a hearing on the issue." *Id*. This is known as a *Corley* hearing. This Court gave guidance regarding the burdens of proof at a *Corley* hearing, stating,

> The State . . . has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions. In making its determination, the trial court should pay particular attention to whether the time period between the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts, and whether the crimes are interwoven.

*Id*.

5

¶13.   The record in this case shows that the trial judge conducted a *Corley* hearing on April 7, 2006.[3]  From the transcript of that hearing, it is clear that, when making his determination as to whether the motion to sever should be overruled,  the trial judge meticulously followed the guidelines set forth in *Corley* .  The trial judge stated:

> The first factor I have to consider is whether the time period between the occurrences is insignificant, whether the evidence [in] proving each count would be admissible to prove each of the other counts, and whether the crimes are interwoven.  Those are the three factors that I must consider under *Corley* and then *Rushing* and under the Statute.

¶14.   The trial judge analyzed each *Corley* factor, finding that the time period between the two crimes was only four hours, noting that the only additional witness as to Count 1 would be the DNA geneticist and pointing out the many similarities between both rapes. Ultimately, the trial court found that the two counts did not merit severance and held that they would be tried together.

¶15.   We cannot say that the trial judge abused his discretion in allowing the two counts to be tried together.  By way of analogy, we look to *Rushing v. State*, where  this Court throughly considered each of the *Corley* factors when reviewing whether a trial court properly overruled Rushing's motion to sever. *Rushing*, 911 So. 2d 526, 534 (Miss. 2005). Rushing was indicted on four counts of prescription forgery for obtaining controlled substances through fraud at various pharmacies over a five-month period.  On appeal, we found as to the first *Corley* factor, that the five month time period over which Rushing committed prescription forgery was "not such a significant amount of time so as to require

_____

[3] Counsel for the defendant represents in his brief that "no actual hearing was held." However, after the record was supplemented per order of this Court, it is clear that a *Corley* hearing was held.

severance." ***Rushing***, 911 So. 2d at 536. As to the second factor, we found that, although one count would require testimony from one pharmacist, while the other counts would require testimony from another pharmacist, all of the physical evidence admitted at one trial could also be admitted at the other trials. Lastly, we found that there was no doubt that the crimes committed by Rushing were all part of the same common plan or scheme, and were clearly interwoven. ***Id***.

¶16. Here, the two rapes occurred only three hours apart. Doe testified that Golden arrived at her apartment at around 2:00 a.m. Roe testified that Golden arrived at her house around 5:00 a.m. Consequently, we find that the trial judge did not abuse his discretion in finding the first ***Corley*** factor had been satisfied. Clearly a span of only three hours between the two crimes was not a sufficient lapse of time to weigh in favor of severance.

¶17. The second ***Corley*** factor appears more problematic. While some of the evidence introduced to prove the rape of Doe would also have been admissible to prove the rape of Roe, Doe immediately went to the hospital, where a rape kit was performed. As such, the State was able to introduce DNA evidence through the testimony of Deedra Hughes ("Hughes"), a DNA technical leader of the Mississippi Crime Lab, and Jamie King ("King"), a DNA analyst. Other witnesses who testified only as to Doe's rape included Doe's neighbor, who saw her shortly after the attack; Officer Carl Lampton, who was the responding officer to the crime scene; and the nurse who performed the rape kit on Doe. At the ***Corley*** hearing, the trial judge correctly recognized that, in trying the two counts together, there would be some evidence in common and some not. Therefore, we find the trial court

7

took into account the factors which were common, and those which were not, and we are unable to say that the trial court abused his discretion.

¶18. We also find that the trial judge did not abuse his discretion in finding that the third *Corley* factor had been met. In analyzing the third factor, the question posed is whether the two rapes committed by Golden were interwoven, that is, part of a common plan or scheme. *See **Rushing***, 911 So. 2d at 536. As stated previously, the rapes occurred only three hours apart. Both of Golden's victims knew him personally–Doe was his cousin and Roe was a close family friend. Golden showed up at both victims' homes unannounced. He told both victims that he just needed a place to sit down for a minute because his parents would not allow him into their home. Golden asked both victims for a glass of water before he "jumped" on them and raped them. Both victims testified that Golden held a gun to their heads. The trial judge clearly considered these similarities during the *Corley* hearing, and we find that he did not abuse his discretion in finding the two crimes were so closely interwoven that they were part of a common plan or scheme.

¶19. After weighing and considering the three *Corley* factors, taken together as a whole, the trial judge concluded that the two counts of rape should be tried together. We find that the trial judge did not abuse his discretion by overruling Golden's motion to sever.

## II. Failure to Timely Swear in the Jury with the Capital Oath

¶20. Golden next argues that the trial court failed to administer the oath required in a capital case until after the evidence had been presented, and that he was therefore deprived of a fair trial. The State responds that Golden failed to object or move for a mistrial and,

therefore, this argument is procedurally barred. Alternatively, the State argues the claim has no merit because the trial court administered the oath.

¶21. First, we point out that any failure of the trial court to swear the jury in a capital case is waived where no contemporaneous objection is made. *McMillin v. State*, 191 Miss. 59, 61, 2 So. 2d 823, 824 (1941). Here, the record reflects that counsel for Golden failed to make any objection when the judge administered the oath for capital cases midway through the trial. As such, Golden's plea on appeal for reversal on this issue is barred. Procedural bar notwithstanding, we will address the merits of Golden's claim.

¶22. Golden states that forcible rape is a capital crime which requires the special oath specified by Mississippi Code Annotated Section 13-5-73 (Rev. 2002), which provides that "[t]he jurors in a capital case shall be sworn to well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and law." In order to determine which crimes fit within the meaning of "capital case," we turn to Mississippi Code Annotated Section 1-3-4 (Rev. 2005), which states:

> The terms "capital case," "capital cases," "capital offense," "capital offenses," and "capital crime" when used in any statute shall denote criminal cases, offenses and crimes *punishable by death* or *imprisonment for life* in the state penitentiary.

(Emphasis added).

¶23. Golden was charged with the crime of forcible rape pursuant to Mississippi Code Annotated Section 97-3-65(4)(a) (Rev. 2006), which allows for a sentence of life imprisonment. Therefore, Golden was entitled to have the capital oath administered to the jurors. The record reflects that the trial judge administered this oath midway through the

trial.  In their briefs, however, the parties state that the trial judge administered the petit oath at the beginning of trial.

¶24.   Although the record does not indicate that the trial judge administered any oath at the beginning of trial, the trial judge indicated on the record during voir dire that an oath had been given, stating "[e]verybody understands that if you were to do that, you would be violating your oath."  Finding no objection from either party to the judge's assertion that the oath had been given, we find that the petit oath was given at the beginning of trial, as represented by the trial judge.  Furthermore, this Court has stated that when the record is silent, there is a presumption that the jury was properly sworn. *Young v. State*, 425 So. 2d 1022, 1025 (Miss. 1983); *Ratcliff v. State*, 201 Miss. 259, 29 So. 2d 321 (1947).

¶25.   Having found the trial judge did administer the petit oath, we further find that, even had the trial judge failed to administer the oath provided in Mississippi Code Annotated Section 13-5-73, there would be no error because the oaths required under Sections 13-5-73 and 13-5-71 are "substantially equivalent, if not substantially the same." *Wilburn v. State*, 608 So. 2d 702, 705 (Miss. 1992).  This Court has held that "[t]he purpose of the judicial oath is to impart to the oath-taker the idea he is bound in conscience to perform an act faithfully and truthfully and to awaken and stimulate his conscience and impress his mind with his duty and responsibility to do so." *Wilburn v. State*, 608 So. 2d 702, 705 (Miss. 1992).

¶26.   Thus, we find that the oath given in the middle of trial, together with the petit oath given at the beginning of trial, were sufficient to instruct the jury of their duty to "well and truly try all issue[s] and . . . a true verdict give according to the evidence and the law."  Miss.

10

Code Ann. § 13-5-73 (Rev. 2002). The trial judge asked the potential jurors to "solemnly swear or affirm that [they would] well and truly try the issues between the State of Mississippi versus William Golden, Junior and give true verdicts . . . according to the evidence of the law." Because the oath reflected in the record was sufficient to insure the solemn duty of the jury, we find no reversible error.

### III. Failure to Instruct the Jury

¶27. Golden next argues that he is entitled to a new trial because "no instruction was given to the jury on its sole duty to fix the penalty in the case of forcible rape under Miss. Code Ann. Section 97-3-71." Golden argues that "failing to allow the jury to perform this function constitutes an illegal sentence which is plain error." Section 97-3-71(Rev. 2006) states that,

> Every person who shall be convicted of an assault with **intent to forcibly ravish** any female of previous chaste character shall be punished by imprisonment in the penitentiary for life, or for such shorter time as may be fixed by the jury, or by the court upon the entry of a plea of guilty.

(Emphasis added). The State points out, however, that Golden was charged with two completed acts of rape under Mississippi Code Annotated Section 97-3-65(4)(a) (Rev. 2006),[4] and that the reference to Section 97-3-71, which deals with attempted rape, was merely a scrivener's error in the indictment.

---

[4] At the time of Golden's indictment, dated April 5, 2005, the language in his indictment tracked our statute dealing with forcible rape, which was Mississippi Code Annotated Section 97-3-65(3)(a). This section of the Code was amended in 2006, and the subsection applicable in this case is now Section 97-3-65(4)(a). The language in this subsection was not amended–the subsection number merely changed.

11

¶28. A review of the indictment evidences that although Section 97-3-71 is referenced in the heading, the substance of the indictment clearly charges Golden with two counts of forcible sexual intercourse. With regard to both counts, the indictment reads:

> the aforesaid, did unlawfully, wilfully, and feloniously, have forcible sexual intercourse with [victim], against her will and without her consent; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.

This Court has stated on numerous occasions that an indictment serves to alert the defendant of the pending charges, and purely technical errors will not be deemed prejudicial. *See Ishee v. State*, 799 So. 2d 70, 76 (Miss. 2001) (citing *Westmorland v. State*, 246 So. 2d 487, 489 (Miss. 1971)). Also, we have recently held that, when dealing with indictments, that we employ a rule of substance over form. *Wright v. State*, 958 So. 2d 158 (Miss. 2007). In *Wright*, we stated that "[a]lthough a typographical error existed concerning the subsection number, the substance of the indictment read that Wright was charged with forcible rape." *Id*.

¶29. Following our rule regarding purely technical errors in indictments, we find that any reference to Section 97-3-71 in Golden's indictment is of no moment. The substance of the indictment clearly charged Golden with forcible rape under Section 97-3-65, which states that "[e]very person who shall have forcible sexual intercourse with any person . . . shall be imprisoned for life . . . if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment, the court shall fix the penalty . . . for any term as the court, in its discretion, may determine. Miss. Code Ann. § 97-3-65(4)(a) (Rev. 2006).

12

¶30. Therefore, Golden's argument that he was entitled to have the jury fix his sentence upon conviction pursuant to the language of Mississippi Code Annotated Section 97-3-71 has no merit. Mississippi Code Annotated Section 97-3-65(4)(a) clearly allows the court to fix the penalty in the event that the jury fails to do so.

### IV. Ineffective Assistance of Counsel

¶31. Golden next argues that his trial counsel was ineffective, and sets forth twenty-one alleged deficiencies he argues constitute ineffective assistance of counsel. We begin our analysis by pointing out that all criminal defendants have a Constitutional right to assistance of counsel. U.S. Const. amend. VI. The test is one of reasonableness, that is, whether counsel provided "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Stated differently, in order to prevail on a claim of ineffective assistance of counsel, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*.

¶32. The burden to prevail on a claim of ineffective assistance of counsel is two-fold. A defendant must show not only that his counsel's performance was deficient, but also that he was prejudiced by the deficient representation. This second burden requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This Court has recognized that "a strong presumption of competence exists in favor of the attorney." *Havard v. State*, 928 So. 2d 771, 780–81 (Miss. 2006) (citing *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991)). No detailed rules are set forth to regulate counsel's conduct, for "[a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide

13

latitude counsel must have in making tactical decisions." *Wilcher v. State*, 863 So. 2d 776, 803 (Miss. 2003) (quoting *Strickland*, 466 U.S. at 688–89.) With this standard in mind, we will address each of Golden's arguments in turn, consolidating similar issues into one discussion.

### a. Failure to Pursue Hearing on Motion to Sever

¶33. Golden argues that although his trial counsel filed a motion to sever, he failed to pursue an actual hearing. As discussed *supra*, the trial judge held a *Corley* hearing, and the transcript of that hearing was supplemented to the record. Therefore, this argument has no merit.

### b. Failure to Object to Trial Court's Failure to Timely Administer Special Oath

¶34. Golden points out that it was the defense counsel's duty to object to the trial court's failure to administer the special oath. *Bell v. State*, 360 So. 2d 1206, 1215 (Miss. 1978). As discussed previously, when a trial judge administers the oath after the start of trial, any perceived error is harmless. Therefore, this argument also fails.

### c. Failure to File a Motion for a Speedy Trial

¶35. Golden argues that, although a total of 363 days elapsed between his indictment[5] and trial, no motion for a speedy trial was filed. Golden's argument that this amounts to ineffective assistance of counsel fails for two reasons. First, in his brief, counsel for Golden failed to provide this Court with any information that the requirements for violation of

---

[5] The speedy trial statute states that the time period for determining whether there has been a violation of Section 99-17-1 is 270 days "after the accused has been *arraigned*." Miss. Code Ann. § 99-17-1 (Rev. 2007) (emphasis added).

14

Mississippi Code Annotated Section 99-17-1 (the speedy trial statute) have been satisfied. Section 99-17-1 provides that:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

¶36. It is not a per-se violation of the statute for the defendant to be tried later than 270 days following arraignment. The statute will not be violated if good cause is shown and a continuance is granted by the court. *State v. Harrison*, 648 So. 2d 66, 69 (Miss. 1994). Golden provides no information as to whether good cause was shown for the delay or whether the court granted any continuances. Golden has failed to present to this Court any viable argument or any authority in support of his argument that his trial counsel was defective for failing to file a motion for a speedy trial. This Court has stated on numerous occasions that it is not required to address issues not argued or supported with authority or citations to the record. *See Edwards v. State*, 800 So. 2d 454, 468 (Miss. 2001).

¶37. Second, counsel for Golden failed to raise any speedy-trial violation on appeal. If trial counsel's failure to file a motion for a speedy trial equates to ineffective assistance of counsel, then we fail to see how not raising such a violation on appeal would not also be considered ineffective assistance of counsel. For these reasons, this argument likewise has no merit.

### d. Failure to Give Opening Statement

¶38. Golden argues that his counsel was ineffective for failure to give an opening statement. This Court has held that the decision of whether to make an opening statement is a strategic one. *Gilliard v. State*, 462 So. 2d 710, 716 (Miss. 1985). Furthermore,

15

"[f]ailure to give an opening statement is not per se ineffective assistance of counsel." ***Branch v. State***, 882 So. 2d 36, 55 (Miss. 2004). Additionally, counsel for the defendant has failed to show how trial counsel's failure to give an opening statement prejudiced Golden. As such, we find that this argument has no merit.

### e. Failure to make any Batson Challenges or Challenges for Cause

¶39. Golden's next assignment of error regarding ineffective assistance of counsel is that his "[t]rial counsel made no objection or record on any possible ***Batson*** issue [and] [h]ad no challenges for cause to the jury panel." Again, appellate counsel fails to cite any specific portion of the record or present any argument whatsoever that a ***Batson*** issue or challenge for cause could have, or should have, been made. As such, this Court is not required to address this argument. *See* ***Edwards***, 800 So. 2d 468. Appellate counsel does not specify whether he claims a ***Batson*** challenge should have been made on the basis of race, gender or religion. Essentially, this Court is left to read the jury voir dire and determine whether or not any juror was struck on the basis of race, gender or religion in violation of ***Batson***, despite the fact that no ***Batson*** challenges were made, and also whether any juror should have been struck for cause. With no guidance or citation to the record from appellate counsel to any possible ***Batson*** issues or reasons to strike a juror for cause, we find this argument has no merit.

### f. Failure to Object to Statements made by the Prosecutor

¶40. Golden points to several instances of trial counsel failing to object to certain statements made by the prosecutor during voir dire. First, Golden argues that defense counsel should have objected to the prosecutor's comment that in this case "there isn't a

16

consent issue," arguing that consent is a core issue of forcible rape. However, when read in full context, the prosecutor was merely making a distinction between statutory and forcible rape. Secondly, Golden argues that trial counsel should have objected to the prosecutor's statement that an eyewitness account would be "beyond any doubt." Golden argues that this comment vouched for the witnesses in the case. Again, when read in context, the prosecutor was merely attempting to explain his "beyond a reasonable doubt" burden of proof.

¶41. Golden has failed to demonstrate that his attorney's conduct was defective for failure to make these specific objections during voir dire. Furthermore, Golden has not shown how defense counsel's failure to object in these two instances prejudiced him in any way. This Court has found that strategy decisions, such as not objecting to a particular statement, are considered tactical, and will not rise to the level of ineffective assistance of counsel. *Irby v. State*, 893 So. 2d 1042, 1048 (Miss. 2004).

### g. Implicitly Conceding the Defendant's Crime on Cross-examination

¶42. Golden argues that defense counsel implicitly conceded that the rape occurred when he prefaced a question on cross-examination with the phrase "back on December 30, when this happened . . . ." We agree that counsel's question could have been put differently. However, this Court has pointed out on many occasions that no trial is perfect, and no defendant is entitled to errorless representation. *Davis v. State*, 897 So. 2d 960, 966 (Miss. 2004). We find this comment to be no more than a harmless misstatement by defense counsel. Based on the evidence against the defendant in this case, we find the comment had little, if any, effect on the jury's determination of the defendant's guilt. This misstatement hardly rises to the level of concession of guilt.

17

### h. Eliciting Prejudicial Testimony on Cross-examination

¶43. Golden claims that on several occasions, trial counsel elicited prejudicial testimony on cross-examination. On direct examination, Doe testified that Golden stank, but she did not think he smelled like alcohol. On cross-examination, defense counsel questioned Doe again about the smell, and Doe again stated that she did not think the smell was alcohol. Doe testified that Golden did not appear to be intoxicated, but after he raped her she "knew something was wrong with him." Golden argues that this testimony put "evidence in front of the jury that Golden was high on something other than alcohol."

¶44. Also, on cross-examination, trial counsel was questioning Roe about her relationship with Golden when she stated that the last time she had seen Golden was "about two years ago after he got out of jail." Golden argues that this testimony was damaging, irrelevant and prejudicial, and defense counsel erred in making no attempt to stop it.

¶45. We find that the decisions made at trial during cross-examination are tactical decisions, and this Court will not analyze these decisions in hindsight to find that certain questions should or should not have been asked of a witness. The general rule is that "an attorney's decision to call certain witnesses and ask certain questions 'falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.'" *Turner v. State*, 953 So. 2d 1063, 1073 (Miss. 2007) (quoting *Bell v. State*, 879 So. 2d 423, 434 (Miss. 2004)).

### i. Failure to Cross-examine Witnesses

¶46. Golden complains of several instances in which trial counsel failed to cross-examine witnesses, once again without any citation or authority or argument that such failure was

18

prejudicial. As stated previously, the decision of whether or not to cross-examine lies within the discretion of the trial counsel. *See Turner*, 953 So. 2d at 1073.

¶47. Appellate counsel does provide some argument regarding trial counsel's failure to cross-examine Hughes and King, who testified concerning the DNA evidence. Golden argues that his Sixth Amendment right to confrontation was violated by trial counsel's failure to cross-examine Hughes and King because the reports they testified about were not actually prepared by them. A review of the record reveals otherwise.

¶48. During her direct examination, Hughes stated that she actually performed the serological examination, despite her use of the term "we" when testifying concerning trial lab procedures. When asked by the prosecution if she tested the swabs that were taken from the rape kit, Hughes replied, "that's correct." King made the same assertion, when asked if she prepared a report in this particular case she replied, "yes." Therefore, we find that the testimony of Hughes and King clearly indicates that they performed the actual tests and reports that they were testifying about.

¶49. Thus, defense counsel's decision not to cross-examine these two witnesses, as well as the other witnesses he chose not to cross-examine, cannot be said to be unreasonable. The decision of whether or not to cross-examine a witness is a tactical one. And absent a showing of some helpful fact which clearly could – and should – have been developed on cross-examination, such decisions do not warrant a finding of ineffective assistance of counsel. *See Murphy v. State*, 453 So. 2d 1290, 1293 (Miss. 1984).

### j. Numerous Failures to Object

¶50. Golden argues that trial counsel was deficient in failing to object, pointing to numerous instances when he claims an objection should have been made. Again, decisions such as the decision not to object are considered tactical, and do not rise to the level of ineffective assistance of counsel. *Irby*, 893 So. 2d at 1048. We say no more on this point than that counsel might have many reasons for deciding not to object to a question which is technically objectionable. For instance, counsel might conclude that an objection would draw attention to the question and answer. We find this argument has no merit.

### k. Failure to Give an Instruction Regarding Defendant's Right Not to Testify

¶51. Golden complains of trial counsel's failure to prepare a jury instruction concerning the defendant's right not to testify. Again, appellate counsel has failed to provide this Court with the required authority in support of this argument. As such, this Court need not consider this argument. *Edwards*, 800 So. 2d 468. Even so, this claim has no merit.

¶52. This Court has held that the "[f]ailure to ask for, or the decision not to ask for [an instruction regarding the defendant's right not to testify] cannot be said to be error, because it is subject to debate whether such an instruction helps or harms the defendant who does not testify." *Schuck v. State*, 865 So. 2d 1111, 1124 (Miss. 2003). Such a decision is considered tactical. *Id*. at 1125. Furthermore, and most importantly, the trial judge specifically explained to Golden on two occasions that he could give an instruction regarding the defendant's right not to testify, stating "some people want that instruction, some do not . . . do you understand that," to which Golden replied "uh-huh." The trial judge further asked,

20

"do you have any concerns about not getting that instruction?" Golden replied, "no." Therefore, this argument has no merit.

### l. Failure to Put on Any Defense

¶53. Once more, without any citation of authority, appellate counsel asserts that at trial, "no defense was put on," specifically criticizing trial counsel's closing argument. As stated earlier, a defendant is entitled to reasonable and effective – not errorless – counsel. Our review of the record reveals that, as in most cases, Golden's defense was not perfect. However, we find he received reasonable representation.

¶54. Golden's trial counsel filed a pre-trial motion to sever the two counts of rape and argued at the *Corley* hearing that trying two counts together would be highly prejudicial to his client. Defense counsel conducted voir dire, which included instructing the jury as to the State's burden of proof. Defense counsel objected to one of the State's for-cause strikes, arguing that the potential juror "said he could be fair and impartial" despite the fact he had known the defendant his entire life, with which the court agreed. Defense counsel cross-examined four of the State's eight witnesses. Although this cross-examination yielded little or no damaging testimony against the State's case, trial counsel seemingly made an effort to get some witnesses to contradict their prior testimony. The defense chose not to call any witnesses, and appellate counsel has identified no witnesses that the defense could have called to testify on behalf of the defendant. The defendant was thoroughly advised of his right to testify, and he told the trial judge he did not want to testify. In closing, defense counsel did not rehash the damaging testimony against his client, but merely reminded the jury of the State's heavy burden of proof and the defendant's presumption of innocence.

21

Given the strength of the State's case against Golden, we find that, under the circumstances, trial counsel provided reasonable, if not perfect, representation to his client.

  **m.  Failure to Put on Any Mitigating Evidence during Sentencing**

¶55. Golden finally argues that his trial counsel was defective in failing to put on any evidence of mitigation during sentencing. Once again, this Court is provided with no citation of authority or any viable argument that any mitigating evidence even existed. Therefore, we find that this argument lacks merit and should not be considered. ***Edwards***, 800 So. 2d 468.

## CONCLUSION

¶56. We find that the trial judge held a proper ***Corley*** hearing on the defendant's motion to sever, and did not abuse his discretion in determining that the two counts of rape could be tried together. Also, we find no merit in Golden's claims of error regarding the trial court's failure to swear the jury with the capital oath at the beginning of trial and the trial court's failure to have the jury fix the term of imprisonment. Finally, having thoroughly considered each of Golden's claims regarding ineffective assistance of counsel, we find that Golden's defense counsel provided "reasonably effective assistance." Therefore, his claim has no merit.

¶57. **COUNT 1: CONVICTION OF FORCIBLE RAPE AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF FORCIBLE RAPE AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I FOR A TOTAL OF EIGHTY (80) YEARS.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES RANDOLPH AND LAMAR, JJ., CONCUR**.