# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-02279-SCT

*LEE DARRELN NIX*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2007 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN A. SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/19/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON AND LAMAR, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Lee Darreln Nix was convicted in the Harrison County Circuit Court on two counts: Count I – touching a child for lustful purposes, and Count II – kidnapping. Nix was sentenced to ten years for each of the two counts, with the sentences to run consecutively. Nix now appeals his conviction, asserting that trial counsel was ineffective and that the verdict was against the overwhelming weight of the evidence.

¶2.     Finding no merit to Nix's claims, this Court affirms the conviction.

# FACTS

¶3.     On September 5, 2005, Jane left the Beauvoir Manor apartments at around 9:00 p.m., walking home to the Covenant Square apartments.[1] Jane, fourteen years old at the time, frequently made this journey, using the same route that she walked that evening.

¶4.     As Jane walked through the parking lot of El Rancho, defendant Nix approached her in a green vehicle.[2] Nix asked Jane if she was the girl who stayed at Covenant Square apartments, stating that he had seen her before. Because she believed that he may have known her mother, Jane spoke to Nix. After a brief conversation, Jane continued on her way to Covenant Square apartments.

¶5.     When she turned the corner after walking behind Popeye's, Jane saw Nix running across the street toward her. Nix stopped to talk to Jane and asked where she was going. Jane kept walking toward the apartments, and Nix walked with her. As they walked, Nix offered to pay Jane if she would let him put his hand up her skirt. Jane told Nix no. Nix then grabbed Jane by the shirt collar, making a ripping sound, and put his hand up her skirt, touching her private area.

¶6.     Nix continued to hold Jane and begged to stick his hand up Jane's skirt again, but Jane refused. Nix took Jane toward a ditch and held her by the wrist while he urinated. As Nix continued to pull Jane toward the ditch, Jane kicked Nix in the leg and ran to Covenant Square apartments.

---

[1]This Court uses the fictional name "Jane" in order to protect the victim.

[2]Jane identified the man as the defendant, Lee Darreln Nix, in a photo lineup on the evening of the incident and during her testimony.

2

¶7. Upon reaching the apartments, Jane joined her friends, who were outside, and told them what had transpired. Jane then saw Nix come out from the other side of a building, and pointed him out to her friends. Cory Robinson, a friend of Jane's, chased Nix on foot, and Nix fled toward Walgreens and Back Yard Burgers. Nix got in his car and drove away from the scene. As Nix drove away, however, he passed Robinson, and Robinson kicked the rear passenger side of the car.

¶8. Officer Kit Manning was dispatched to Covenant Square apartments at approximately 8:50 p.m. Officer Manning took Jane's statement and issued a "be on the lookout" for a vehicle as described by Jane. A few hours later, a vehicle matching the description was reported at 1626 Perry Drive, where the officers located and questioned Nix and his girlfriend, Dianne Mayfield. Officer Manning testified that a footprint was visible on the vehicle's right rear quarter panel, consistent with Robinson's statement.

¶9. While being questioned that night by Manning, Nix stated that he had returned home that evening sometime between 6 and 6:30 p.m. At trial, Nix testified that on that evening, he met Angela Fletcher at 6:30 p.m. at Hardy Court Shopping Center in Gulfport. Nix testified that he arrived home at approximately 8:30 p.m. that evening. Fletcher testified that she met with Nix, and he left between 7:30 and 8:30 p.m.

¶10. Jane testified that on the date of the incident, Nix, the man who grabbed and touched her, was wearing a jersey. Robinson testified that the man he chased, whom he identified at trial as Nix, was wearing a Kobe Bryant Los Angeles Lakers jersey. Mayfield told Officer Manning that when Nix arrived home at around 8:30 p.m., he was wearing his Kobe Bryant Los Angeles Lakers jersey.

3

**I. Whether defense counsel's assistance was ineffective in failing to object to jury instruction.**

¶11. Nix argues that his conviction should be reversed and remanded for a new trial due to ineffective assistance of counsel. Specifically, Nix asserts that trial counsel should have objected to jury instruction S-1 offered by the prosecution. According to Nix, the jury instruction contained language that differed from the language of the indictment. Nix claims that he was prejudiced by counsel's failure to object and was convicted under a lesser burden of proof than required by the indictment.

¶12. The United States Supreme Court has held that "the benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).[3] To determine whether counsel's conduct undermined the fairness of the proceedings, the defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance deprived him of a fair trial. *Stringer v. State*, 454 So. 2d 468, 476 (Miss. 1984). If the defendant is not able to make both showings, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

---

[3]This Court adopted the *Strickland* test in *Gilliard v. State*, 462 So. 2d 710 (Miss. 1985).

¶13.   Deficiency of the conduct and any resulting prejudicial effect are assessed by looking at the totality of the circumstances. *Hiter v. State*, 660 So. 2d 961, 965 (Miss. 1995) (citing *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988)). The right to effective counsel entitles a defendant to competent counsel, not perfect counsel. *Davis v. State*, 897 So. 2d 960, 966 (Miss. 2004). A strong but rebuttable presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance. *Hiter*, 660 So. 2d at 965. The failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective assistance of counsel. *Bell v. State*, 879 So. 2d 423, 440 (Miss. 2004), *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995).

¶14.   Count I of the grand jury indictment (Touching of a Child for Lustful Purposes) stated that Nix " . . . did unlawfully, wilfully and feloniously handle, touch or rub with his hands, *the vagina* of [Jane] . . . ." (Emphasis added). The jury instruction offered by the State, however, differed by stating that Nix " . . . did unlawfully, wilfully and feloniously handle, touch or rub with his hands, *the body* of [Jane] . . . ." (Emphasis added).

¶15.   Nix argues that trial counsel should have objected to the jury instruction because it differed from the language of the indictment. The jury instruction, however, followed the language of the Mississippi statute under which Nix was charged, which requires that there be a handling, touching, or rubbing of a child for the purpose of gratifying lust or indulging depraved licentious sexual desires, regardless of which part of the child's body is handled, touched, or rubbed. *See* Miss. Code. Ann. § 97-5-23(1) (Rev. 2006).

¶16.   The first prong of the *Strickland* test requires counsel's conduct to be deficient. *Strickland*, 466 U.S. at 687. If the jury instruction offered by the State was not error, then

counsel's failure to object could not rise to the level of deficient conduct. The purpose of the indictment is to give the defendant fair notice of the crime charged. *Bell v. State*, 360 So. 2d 1206, 1208-1209 (Miss. 1978). This Court has held that, although jury instructions generally should track the language of indictments, an instruction is not necessarily fatally defective for failure to do so, so long as the instruction "accurately follow[s] the requisite elements of the crime." *Duplantis v. State*, 708 So. 2d 1327, 1343-1344 (Miss. 1998). A jury instruction's variance from the language of the indictment "must be material to accurately categorize an instruction as error." *Williams v. State*, 445 So. 2d 798, 806 (Miss. 1984).

¶17.    In *Williams*, the indictment charged the defendant with taking a money box, a billfold, and some money. *Id.* The instruction, however, directed the jury to determine whether the defendant took the money box, billfold, or anything of value. *Id.* This Court found that the jury instruction, although a variance from the indictment, did not constitute error. *Id.* In support of its finding, this Court noted that the instruction did not: materially vary from the charge alleged in the indictment, accuse the defendant of a crime separate and distinct from that of the indictment, or refer to alleged facts of which the defendant had no notice. *Id.*

¶18.    Applying these factors to the instant case, the differing language of the instruction should not be characterized as material, since it follows the language of the statute under which Nix was charged. The instruction did not accuse Nix of any other separate or distinct crime other than that of the indictment, nor did it refer to facts of which Nix had no notice. Although the language of the instruction varied from that of the indictment, it was not a material variance and therefore did not constitute error. As allowing the instruction was not

6

error, it cannot be said that trial counsel's conduct was deficient based on a failure to object on that basis.

¶19. Even if counsel's conduct can be viewed as deficient, Nix has not satisfied the second prong, that the conduct deprived him of a fair trial.

¶20. Nix argues that the language of the jury instruction effectively amended the indictment, and that he was prejudiced by such amendment. In support of this contention, Nix cites *Quick v. State*, 569 So. 2d 1197 (Miss. 1990). In that case, this Court reversed and remanded the conviction, holding that the jury instructions contained additional language that amounted to an amendment of the substance of the indictment. *Id.* at 1200. In *Quick*, the defendant was charged in the indictment with "wilfully, unlawfully, feloniously, purposely and knowingly" committing aggravated assault. *Id.* at 1198. The jury instruction added language that provided for a guilty verdict if the jury found that the assault was committed "recklessly under circumstances manifesting extreme indifference to the value to human life." *Id.*

¶21. *Quick*, however, is easily distinguished from the instant case. In *Quick*, this Court held that "though the defendant may have defended against the elements of purposely and knowingly, he was caught off guard by not having been put on notice that he must also defend against the element of recklessness." *Id.* at 1200. Nix's defense presented at trial was that he was not present when the incident occurred and therefore could not have committed the crime. His defense, if found credible, would have been a complete defense, whether he was charged with touching the body or touching the vagina. His defense was not affected

7

by the change in language in the jury instruction, and therefore, Nix is unable to show prejudice that deprived him of a fair trial.

¶22. To pass the *Strickland* test, Nix must demonstrate that, but for the errors of trial counsel, there is a reasonable probability that he would have received a different outcome in the trial. *Nicolau v. State*, 612 So. 2d 1080, 1086 (Miss. 1992). Nix has not satisfied either prong of the *Strickland* test, and therefore, this argument is without merit.

**II. Whether the verdict was against the overwhelming weight of the evidence.**

¶23. Nix argues that the circuit court erred in denying his motion for a new trial, as the guilty verdict returned by the jury is against the overwhelming weight of the evidence. Nix asserts that the evidence presented could not support a finding that the prosecution had proved the elements of the offense charged beyond a reasonable doubt.

¶24. The standard of review applied to claims that a conviction is against the overwhelming weight of the evidence is as follows:

> [This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.

*Todd v. State*, 806 So. 2d 1086, 1090 (Miss. 2001). "There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." *King v. State*, 857 So. 2d 702, 731 (Miss. 2003) (citing *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977)).

¶25. A review of the record reveals that evidence supporting the jury's verdict was presented throughout the trial. Jane testified as to what transpired that night and identified

8

both Nix and his vehicle. Robinson also identified Nix and testified to what he saw that night and where he kicked the vehicle. Officer Manning testified that Nix's vehicle had a footprint on the rear passenger door, corroborating Robinson's testimony. Photographs of the vehicle and footprint were entered into evidence. Jane testified that her assailant was wearing a jersey, and Robinson testified that Nix was wearing a Kobe Bryant jersey. Mayfield testified that Nix was wearing a Kobe Bryant jersey when he returned home that evening.

¶26. During his testimony, Nix denied being at the location of the incident on the night in question. Fletcher corroborated his alibi and testified about their meeting that night. This testimony, however, merely created an issue of fact for the jury to resolve. "The jury is the sole judge of the weight of the evidence and the credibility of the witnesses." *Mohr v. State*, 584 So. 2d 426, 431 (Miss. 1991).[4]

¶27. The circuit court did not err in denying Nix's motion for a new trial, as the verdict was not so contrary to the overwhelming weight of the evidence as to sanction unconscionable injustice.

**CONCLUSION**

¶28. Finding Nix's arguments to be without merit for the foregoing reasons, this Court affirms the conviction.

¶29. **COUNT I: CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF KIDNAPPING AND SENTENCE OF TEN (10) YEARS IN THE**

---

[4]*See also* **Dixon v. State**, 519 So. 2d 1226, 1228 (Miss. 1988); **Groseclose v. State**, 440 So. 2d 297, 300 (Miss. 1983); and **Marr v. State**, 159 So. 2d 167 (Miss. 1963).

**CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS I AND II SHALL RUN CONSECUTIVELY.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**