MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Leonard Dougalewicz was convicted of the murder of his friend, Bobby Linds-ley. The Hinds County Circuit Court sentenced Dougalewicz as a habitual offender to serve a term of life in the custody of the Mississippi Department of Corrections. Dougalewicz appeals his conviction and sentence, arguing that: (1) the trial court erred in admitting his statement to police into evidence; (2) the trial court should have granted his motion for a directed verdict of acquittal on the murder charge; and (3) the jury’s verdict is against the overwhelming weight of the evidence. Finding no error, we affirm Dougalewicz’s conviction and sentence.
 

 FACTS
 

 ¶ 2. On Sunday, February 8, 2004, a friend found Lindsley, a self-employed exterminator, dead in his mobile home at 1500 Linde Drive in Jackson, Mississippi. The door to the residence was unlocked, and the television and lights were on. Lindsley had head wounds; facial bruises and lacerations; his jaw was broken; and his arms were bruised with what appeared to be defensive wounds. Linds-ley’s body was found in the living room of the trailer on the floor with one leg on a chair. Another chair was lying on its side. A splintered stick was found near the body, broken in pieces and stained with what appeared to be blood. Subsequent tests revealed that Lindsley’s blood-alcohol content was 0.28 percent, but no other drags or medications were detected. The cause of death was determined to be blunt force trauma to the head.
 

 ¶ 3. A pack of Marlboro Reds cigarettes and two packs of Marlboro Lights were recovered from the scene along with various other items. Testimony at trial indicated that Dougalewicz preferred Marlboro Reds but would occasionally smoke Lights.
 
 [1]
 
 Lindsley’s pickup truck was outside, locked, with the keys in the ignition. Lindsley, who was self-employed, was known to carry money and to pay for things with cash, but no paper money was found on his person or in his belongings. Testimony at trial indicated that Douga-lewiez was known to carry a stick in his vehicle, but after the murder it had been replaced with a small bat.
 

 ¶ 4. Dougalewicz became a “person of interest” after it was discovered that he was one of the last persons seen with Lindsley. Lindsley and Dougalewicz were both frequent patrons at Hideaway Lounge on South Gallatin Street in Jackson, and they had been seen leaving together on Friday, February 6, 2004. Lindsley had dated Dougalewicz’s mother, and testimony at trial indicated that the two were friends and that Dougalewicz would occasionally stay with Lindsley. Dougalewicz was interviewed by the Jackson Police Department on March 11, 2004. After signing a
 
 Miranda
 
 waiver, Douga-lewicz told the detectives that he had been
 
 *1200
 
 at Hideaway on Friday afternoon, went home at approximately 4:00 p.m., and then went back to the bar after dropping his car off at Lindsley’s trailer. Dougalewicz said he left Hideaway at approximately 8:30 p.m., went home, woke up the next day, went to work, and came home that afternoon and went to sleep. Dougalewicz said his mother woke him up on Sunday and told him that Lindsley had been found beaten to death. Dougalewicz told police that he did not kill Lindsley and that he had cried when he learned Lindsley had been killed. After the interview, Douga-lewicz was released.
 

 ¶ 5. Dan Bearden testified for the State. He stated that he, Dougalewicz, and Lindsley were drinking beer at Hideaway on February 6, 2004. As Lindsley played a video game, Dougalewicz told Bearden that he planned to rob Lindsley. After trying to talk Dougalewicz out of it, Bear-den informed Lindsley of what Dougalew-icz planned, although Bearden was not sure if Lindsley had taken him seriously. Dougalewicz and Lindsley left the bar together, and Lindsley was last seen alive leaving another bar with Dougalewicz that night.
 

 ¶ 6. Bearden had worked out of town for the week following Lindsley’s murder. He did not learn of the murder until after he returned home. Bearden later encountered Dougalewicz at a bar and accused him of killing Lindsley. Dougalewicz inquired as to what Bearden knew. After Bearden reminded Dougalewicz of their prior conversation,
 
 [2]
 
 Dougalewicz presented four or five hundred dollars in cash and offered it to Bearden to “keep [his] mouth shut.” Bearden rudely refused the money. Bearden discovered a few days later that a $25,000 reward had been offered for information pertaining to Lindsley’s death. Bearden then gave a statement to police.
 

 ¶ 7. After the Bearden interview, Douga-lewicz was charged with capital murder. He was questioned by the detectives from the Jackson Police Department a second time on May 13, 2004. Dougalewicz signed a second
 
 Miranda
 
 waiver, and he gave another statement. Dougalewicz stated that after drinking he had returned to Lindsley’s trailer, drunk, and had laid down on a bed to sleep. Dougalewicz admitted that he had beaten Lindsley, with his fists, after the intoxicated Lindsley had surprised him with untoward and possibly confused sexual advances as Dougalewicz slept.
 
 [3]
 
 Dougalewicz stated that he had believed Lindsley was alive but unconscious when he left. Dougalewicz averred in his statement that he had not robbed Lindsley or taken anything from the residence.
 

 ¶ 8. Dougalewicz was subsequently tried and convicted of murder and sentenced to life as a habitual offender. This appeal followed.
 

 DISCUSSION
 

 1. Admissibility of Dougalewicz’s Second Statement
 

 ¶ 9. Dougalewicz argues that his second statement was not voluntary and therefore should have been suppressed by the trial court. He contends that he was coerced or induced to give an incriminating statement by an apparent offer from the interviewing detective to reduce the charges against him from capital murder to murder, if he admitted that he had killed Lindsley without robbing him.
 

 
 *1201
 
 ¶ 10. In
 
 Armstead v. State,
 
 978 So.2d 642, 645-46 (¶ 11) (Miss.2008), the supreme court stated:
 

 The State must prove beyond a reasonable doubt all facts prerequisite to the admissibility of a confession. As the trier of fact, the trial judge must first determine whether the defendant was advised of his
 
 Miranda
 
 rights. The trial judge must then ascertain, based on the totality of the circumstances, whether the defendant’s statement was freely and voluntarily given, and was not the result of force, threat, or intimidation. If the statement is admitted, this Court will not reverse so long as the finding is based on appropriate principles of law and supported by substantial evidence.
 

 (Internal citations and quotations omitted). Reviewing courts will not disturb the trial court’s finding that a confession is admissible unless “convinced that such a finding was manifestly wrong and/or against the overwhelming weight of the evidence.”
 
 Morales v. State,
 
 990 So.2d 273, 277-78 (¶ 16) (Miss.Ct.App.2008) (quoting
 
 Martin v. State,
 
 854 So.2d 1004, 1007 (¶4) (Miss.2003)). The State’s burden of proving beyond a reasonable doubt that the defendant’s confession was voluntarily given is met and a prima facie case established when an officer involved in the interview testifies that the confession was voluntarily made without threats, coercion, or offers of reward.
 
 Id.
 
 at 278 (¶ 18).
 

 ¶ 11. The trial court held a hearing on Dougalewicz’s motion to suppress the second statement. Detective Eric Smith with the Jackson Police Department was the only witness who testified. Detective Smith testified he and another detective had interviewed Dougalewicz on May 13, 2004, after Dougalewicz was arrested. Detective Smith stated that he had read Dougalewicz the
 
 Miranda
 
 warnings and that Dougalewicz had signed a
 
 Miranda
 
 waiver prior to the interview. Detective Smith further testified that he had not threatened Dougalewicz or used any type of coercion to obtain the statement. Detective Smith testified that the statement was voluntarily given.
 

 ¶ 12. On cross-examination and redirect, Detective Smith elaborated further. He testified:
 

 After I presented Mr. Dougalewicz with the capital murder affidavit, he read it. He asked me what [does] this mean. I said, it means that you’re being charged with capital murder. And he said, well, what can I get. I said, it’s punishable by either the death penalty or life in prison.
 

 Detective Smith then explained the difference between capital murder and murder, stating that capital murder “would include some other felony like arm[ed] robbery.” Dougalewicz then gave his second statement, as we have outlined it above. After a brief recitation of the circumstances surrounding the statement, it began with “I did not take anything from [Lindsley].” After Dougalewicz concluded the statement, Detective Smith told him the charge would likely be reduced from capital murder to murder “due to the fact that he confessed to the murder and in his confession he did not admit to taking anything from Mr. Lindsey [sic].” Detective Smith specifically denied, however, that he had offered or promised Dougalewicz a reduced charge in exchange for the admissions.
 

 ¶ 13. In
 
 Morales,
 
 990 So.2d at 278 (¶ 18), we stated that:
 

 The State’s burden of proving beyond a reasonable doubt that an inculpatory statement was voluntarily given “is met and a prima facie case established by the testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offers of reward.”
 

 
 *1202
 
 (Quoting
 
 Martin,
 
 854 So.2d at 1006-07 (¶ 4)). Detective Smith’s testimony at the suppression hearing met this prima facie burden. Dougalewicz argues that he was “given the impression of hope of reward by a reduction of the charges against him from capital murder to murder” and that he was “induced into making an involuntary statement ... to avoid the greater crime of capital murder.”
 

 ¶ 14. The supreme court, however, has held that this analysis “does not require sweeping inquiries into the state of mind of a criminal defendant who has confessed. Coercive police action is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.”
 
 Martin,
 
 854 So.2d at 1007 (¶ 4) (internal citations and quotations omitted). Dougalewicz argues that the circumstances of the interview suggested an implied police promise to reduce the charges, but Detective Smith specifically denied that any offer, express or implied, existed to reduce the charges. Moreover, Dougalewicz was initially charged with capital murder, and nothing in the record suggests that this charge was unwarranted. It appears much more likely that Dougalewicz’s admissions were calculated to avoid prosecution of the crime with which he was charged. This would not render his statement suspect or involuntary. The trial court’s finding that Dougalewicz’s second statement was voluntary is supported by substantial credible evidence. This issue is without merit.
 

 2. Weathersby Rule
 

 ¶ 15. In his second issue, Dougalewicz argues that he was entitled to a directed verdict based on the holding in
 
 Weathersby v. State,
 
 165 Miss. 207, 209, 147 So. 481, 482 (1933). There, the supreme court held:
 

 [W]here the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [SJtate, or by the physical facts or by the facts of common knowledge.
 

 Id.
 
 (citations omitted).
 

 ¶ 16. This argument is without merit because Dougalewicz did not testify at trial, and he did not offer eyewitness testimony.
 
 Garrett v. State,
 
 921 So.2d 288, 291 (¶¶ 12-14) (Miss.2006) (“[TJhis Court has never held that an unsworn statement to police may be used for purposes of a
 
 Weathersby
 
 analysis.”). Moreover,
 
 Weath-ersby
 
 has no application “where the accused initially denies the act.”
 
 Barfield v. State,
 
 22 So.3d 1175, 1185 (¶33) (Miss.2009) (citation and internal quotations omitted).
 
 Weathersby
 
 is likewise inapplicable where the defendant’s version of the killing is “contradicted by physical facts.”
 
 Id.
 
 Dougalewicz’s version of the events was that he had beaten Lindsley with his fists. However, the medical examiner testified that the injuries did not appear to have been caused by bare hands; instead, they were consistent with repeated strikes from a hard, blunt object. A bloody, broken stick was found at the scene. This issue is without merit.
 

 3. Weight of the Evidence
 

 ¶ 17. In his final issue, Dougalewicz argues that the jury’s verdict is against the overwhelming weight of the evidence. He urges that this Court should reverse and remand for a new trial or, in the alternative, render a conviction for manslaughter.
 

 ¶ 18. “The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 *1203
 

 Smith v. State,
 
 3 So.3d 815, 818 (¶ 13) (Miss.Ct.App.2009) (quoting
 
 Ford v. State,
 
 737 So.2d 424, 425 (¶8) (Miss.Ct.App. 1999)). The supreme court has discussed appellate review of the weight of the evidence supporting a jury’s verdict, stating:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005) (internal citations and quotations omitted). The court has cautioned, however, that a challenge to the weight of the evidence “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id (quoting
 
 Amiker v. Drugs For Less, Inc.,
 
 796 So.2d 942, 947 (¶ 18) (Miss.2000)).
 

 ¶ 19. Reviewing the evidence as we have outlined it above, we do not find the jury’s verdict against the overwhelming weight of the evidence, nor do we find that manslaughter was the only verdict a reasonable jury could have reached. Douga-lewicz initially denied any involvement in the killing, and his second statement’s version of the events was contradicted by physical evidence and witness testimony. Bearden testified that Dougalewicz had stated his intention to rob the victim prior to the killing. Dougalewicz did call Bear-den’s credibility into question, but only to the extent that it created a factual question for the jury. “The jury is the sole judge of the weight of the evidence and the credibility of the witnesses.”
 
 Nix v. State,
 
 8 So.3d 141, 146 (¶ 26) (Miss.2009) (quoting
 
 Mohr v. State,
 
 584 So.2d 426, 431 (Miss.1991)). This issue is without merit.
 

 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Lindsley was stated to prefer Marlboro Lights "shorts”; it is unclear from the record whether the two packs of Marlboro Lights recovered from the scene were "shorts."
 

 [2]
 

 . Bearden's testimony suggested that Douga-lewicz might have been intoxicated at the time he stated his intent to rob Lindsley.
 

 [3]
 

 . Dougalewicz stated that neither he nor Lindsley were homosexuals. He stated that he “[didn’t] think [Lindsley] knew what he was doing.”