ROBERTS, J.,
for the Court:
¶ 1. Larry Evans was convicted of robbery by a jury in the Jones County Circuit Court. The circuit court sentenced Evans to serve fifteen years in the custody of the Mississippi Department of Corrections. Evans appeals, contending that the verdict is against the overwhelming weight of the evidence. We affirm.
FACTS
¶ 2. At approximately 9:30 a.m. on April 25, 2008, a man appeared at the Magnolia State Bank in Laurel, Mississippi. He was wearing several layers of clothing, a wig, two hats, and large sunglasses. The man carried a bag and a note, which he gave to the teller. The note stated that the man had a bomb and that the teller should fill the bag with money within fifteen seconds, or he would detonate the bomb. The teller did as instructed, more or less, and the man left without incident. A bank employee recorded the license plate number of the robber’s vehicle as he fled. Evans was eventually tied to the crime through the vehicle and other evidence, which we shall discuss in due course.
DISCUSSION
¶ 3. Evans contends that the jury’s verdict is against the overwhelming weight of the evidence. The Mississippi Supreme Court has detailed how an appellate court should review the weight of the evidence supporting a jury’s verdict, stating:
*580 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather ... [the reviewing] court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (internal citations and quotations omitted). The supreme court also cautioned that a challenge to the weight of the evidence “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)).
¶ 4. Our analysis begins with a review of the evidence against Evans. Constance Maracha, who described herself as a friend of Evans, testified that on the morning of the robbery, she loaned Evans the vehicle used in the robbery. It was recovered less than one-half mile away from the bank, apparently abandoned by the robber after he had opened the bag to find several thousand dollars and a dye pack, an anti-theft device. The dye pack exploded, destroying the stolen money and staining the robber, his clothes, and the inside of the vehicle with bright red dye. The dye was described as also causing irritation to the skin and eyes with an effect comparable to pepper spray.
¶ 5. Maracha testified that when Evans returned to her home later that day, he was covered in red dye and asked to take a shower. Evans then told Maracha to tell her sister, the owner the vehicle, to report it as stolen. Evans and Maracha then went to speak with an attorney. On the way, Evans told Maracha that he had robbed a bank and that the police were after him. The attorney told Evans to turn himself in, which he did. Maracha accompanied Evans, and she gave a statement to the police a short time later.
¶ 6. Evans was also identified as the robber by Andrew Brown, a bank employee whose duties included security. After the robber entered the bank, Brown found his appearance suspicious, so he approached the robber, exchanged pleasantries, and took a good look at the man. Brown explained that he had been trained to identify facial features, focusing on the part of the face that was visible. Brown described the robber’s visible features as “distinctive.” Brown picked Evans out of a photographic lineup shortly after the robbery, and he made an in-court identification of Evans as the robber.
¶ 7. Brown also authenticated a digital photograph taken during the robbery by a bank security camera. The camera appears to have been positioned a few feet behind the teller, over her shoulder. It was focused on where a customer being served by the teller would stand. The photograph shows the robber from the waist up, and the parts of his face not covered by the disguise are visible. The photograph is in color, although its resolution leaves something to be desired. On appeal, the photograph may not be as use *581 ful to this Court as it was to the jury, since it had an opportunity to see Evans in person; but we note that at the very least, the robber’s appearance is not inconsistent with the single photograph of Evans that appears in the record.
¶ 8. Evans testified in his own defense, and he denied robbing the bank. Evans stated that on the morning of the robbery, he drove a school bus route in Newton, Mississippi. The bus route and accompanying duties occupied him until approximately 7:30 a.m. Evans then went to his father’s home in Lawrence, Mississippi, to repair a heater, although the father was not home at the time. Evans was not sure about the time he left his father’s home, but afterwards he went to Scott County (approximately twenty minutes away) to eat lunch at a Super Value. There he met his son, apparently coincidentally, and the two ate together. After leaving the Super Value, Evans got a call from Maracha, who asked him to come by and told him something about a bank robbery, which he assumed was a “put on.” When Evans arrived, Maracha’s sister was there, and she was upset that her vehicle had been used in a robbery. Maracha’s sister told Evans he needed a lawyer, so he and Maracha left to speak with one. During their discussion with the attorney, Maracha offered to alibi him, but Evans told her he would not lie. Evans also denied that he had ever borrowed the vehicle used in the robbery.
¶ 9. The transportation director of the Newton Municipal School District corroborated Evans’s testimony that he had driven a school bus on the morning of the robbery. Evans’s son also testified that he ate lunch with his father at the Super Value in Forest, Mississippi, “before 11:00” that morning, and that Evans was not stained by dye. Evans testified that the drive from Forest to Laurel was approximately an hour and a half. As the robbery happened approximately 9:30 that morning and he was eating with his son before 11:00 a.m., Evans contended that he could not have been the robber.
¶ 10. On appeal, Evans points to certain weaknesses in the prosecution’s case, but we find none of them compelling. The teller identified a different man in a photographic lineup conducted shortly after the robbery. Evans points out that the teller had the most interaction with the robber, but the State counters that she testified that she did not look at the robber closely because she was afraid of him. Evans also points to an alleged inconsistency in Mara-cha’s accounts concerning how Evans arrived to pick up her car. On cross-examination, Evans’s attorney asked Maracha whether she had told the police Evans had been “dropped off’ at her house; Maracha had previously testified at trial that Evans had arrived at the house in his truck with another person to drive it away. We fail to see the importance of this distinction; and, at any rate, Maracha denied using the words “dropped off’ when she spoke with the police. The police report referenced by Evans’s attorney was never placed into the record or entered into evidence.
¶ 11. Evans fails to address — or even acknowledge — some of the most damning evidence against him. This includes the digital photograph of the robber from the bank security camera and much of Mara-cha’s testimony, including that Evans was stained by red dye when he came to her after the robbery and that Evans had confessed he committed the crime. Evans also asserts in his brief that: “No evidence was present [sic] that Evans had any type of burns or dye on his body or clothes.” It might be accurate as to whether Evans was burned, but the claim that there was no evidence Evans was stained by the dye is plainly false. This lack of candor is *582 inconsistent with Evans’s obligations under the Mississippi Rules of Appellate Procedure. Rule 28(a)(4) requires the appellant’s brief to contain “statement of facts relevant to the issues presented for review.” M.R.A.P. 28(a)(4). Likewise, Rule 28(a)(6) requires that the contentions of appellant be supported by “the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” M.R.A.P. 28(a)(6). To comply with the rules, an appellant attacking the weight or sufficiency of the evidence supporting a jury’s verdict must disclose and examine all of the evidence in the record, including the evidence that supports the verdict.
¶ 12. Having reviewed the record, we find that this case presents nothing but a simple conflict in the evidence. Conflicts in the evidence are for the jury to resolve. Whittington v. State, 377 So.2d 927, 929 (Miss.1979). “[T]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses.” Nix v. State, 8 So.3d 141, 146 (¶ 26) (Miss.2009) (quoting Mohr v. State, 584 So.2d 426, 431 (Miss.1991)). The evidence against Evans was compelling, and the jury simply did not accept his alibi defense. This is not an exceptional case where the evidence preponderates heavily against the verdict. This issue is without merit.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.