# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00200-COA

JAMES MICHAEL JENKINS A/K/A JAMES M.               APPELLANT
JENKINS A/K/A MICHAEL JENKINS A/K/A
JAMES MICHAEL A/K/A JAMES MICHAEL
LEE JENKINS

v.

STATE OF MISSISSIPPI                                           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/22/2015 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A DWELLING AND SENTENCED TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED - 08/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE ISHEE, CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     A Calhoun County jury found James Michael Jenkins guilty of burglary of a dwelling

in violation of Mississippi Code Annotated section 97-17-23 (Rev. 2014).  Jenkins appeals

from his conviction arguing that the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 3, 2014, Brian and Stephanie Murphree's house in Vardaman, Mississippi, was burglarized. Several items were taken from the house, including a 12-gauge shotgun, a .22-caliber rifle, jewelry, a laptop, an electronic gaming system, and two computer tablets. On April 2, 2014, Jenkins, James Bennett Norwood, and David Starkey were indicted for burglary of the Murphrees' house in violation of section 97-17-23. Norwood and Starkey both testified at trial implicating Jenkins in the burglary. Prior to trial, Norwood pled guilty to burglary of a dwelling, and Starkey reached an agreement with the district attorney to plead guilty to a reduced charge.

¶3. Norwood testified that on February 3, 2014, he was with Jenkins at David Allen Morgan's house discussing ways that he and Jenkins could get money for purchasing drugs. Jenkins and Norwood decided to break into the Murphrees' house because Jenkins knew Brian Murphree. Norwood's cousin brought Jenkins and Norwood to a trailer located near the Murphrees' house. Jenkins and Norwood walked through the woods from the trailer to the house. Norwood testified that he and Jenkins broke into the house and took guns, jewelry, and computer tablets from the house. After burglarizing the house, Jenkins and Norwood walked back through the woods. Jenkins called Starkey and told him to come get them. Starkey picked them up five to ten minutes later.

¶4. Starkey testified that Jenkins called him and asked for a ride. Starkey picked up

2

Jenkins and Norwood as they were coming out of the woods. Starkey noticed that Jenkins and Norwood were carrying two guns and bags containing various items. After driving about a half of a mile, Starkey discovered that the items Jenkins and Norwood had were stolen. Starkey stopped and told them to get out of his car. Jenkins and Norwood got out of the car, and Norwood's cousin picked them up.

¶5. Phillip Watts testified that he was a longtime friend of Jenkins. Watts testified that he works on computers. Watts testified that in February 2014, Jenkins dropped off a laptop with Watts for him to work on so that it would run faster. Because the computer did not have a charger, Watts was unable to work on it. Watts was later arrested and charged with receiving stolen property, the laptop, in connection with the burglary. Watts pled guilty to a reduced charge of obstruction of justice.

¶6. Eric Armstrong testified that in February 2014, Jenkins approached him and a group of friends. Jenkins asked if anyone wanted to buy a computer tablet or gun. Armstrong purchased the computer tablet for $35. Armstrong saw the gun Jenkins wanted to sell, but did not purchase it. Armstrong later learned that law enforcement were searching for him due to his possession of the tablet. After speaking with an officer from the sheriff's department, Armstrong returned the tablet to the sheriff's department and provided a statement about how he obtained it. Armstrong was not charged with a crime.

¶7. Deputy Juston Robertson of the Calhoun County Sheriff's Department also testified at trial. As part of Deputy Robertson's investigation of the burglary, he contacted Lee "Buster" McGregor and asked him if he could assist in locating the stolen guns from the

3

Murphrees' house. McGregor told Robertson that Jenkins had previously approached him about selling guns. After speaking with Officer Robertson, McGregor called Jenkins and told him that he wanted to purchase a gun that he was selling. Jenkins and McGregor arranged to meet for the sale. Before Jenkins and McGregor met, Deputy Robertson gave McGregor $150 cash to use for buying the gun. Deputy Robertson took a photo of the cash that he gave to McGregor.

¶8.     McGregor met with Jenkins and purchased a shotgun from Jenkins using the cash that Deputy Robertson had given him. McGregor brought the shotgun to Deputy Robertson. The serial number on the shotgun matched the shotgun that was stolen from the Murphrees' house. McGregor informed Officer Robertson which direction Jenkins was headed after the exchange. Officers stopped a vehicle occupied by Jenkins and being driven by Sharkey. Officers searched Jenkins and found the cash that McGregor had used to purchase the shotgun.

¶9.     Officers went to Morgan's house, because Jenkins was living there at the time. Morgan agreed to allow the officers to search the house. Officers found a cigarette lighter that belonged to the Murphrees in the room where Jenkins slept. Morgan contacted officers the next day and reported that he found a gun at his house. This gun was later identified as the .22-caliber rifle stolen from the Murphrees' house.

¶10.    While in jail, Jenkins wrote a letter to the Murphrees. The letter was addressed: "To the people who I hurt." In the letter, Jenkins apologized "for what [he did]." Jenkins wrote that he needed money for purchasing drugs. He also asked for forgiveness from the

4

Murphrees.  This letter was admitted into evidence.

¶11.    Jenkins testified in his defense at trial.  Jenkins denied any involvement in the burglary.  Jenkins claimed that he was being used as a "scapegoat" because he was a convicted felon.  Jenkins testified that on February 3, 2014, he was at Morgan's house with Norwood, Starkey, Morgan, and McGregor.  He testified that they were all using crystal meth.  Later that night, Starkey and Jenkins went to meet with McGregor.  Jenkins testified that everything up to that point was "sort of fuzzy" due to being "far out there on drugs."  Jenkins claimed that McGregor gave him some money because McGregor owed him for drugs that he had purchased for them to use.  Jenkins also testified that McGregor let him borrow some money because he was going to let Jenkins do some work for him the following day.  Jenkins testified he was pulled over by police after meeting with McGregor.

¶12.    Jenkins claimed he did not know Brian Murphree.  Jenkins also described himself as a "walking pawn shop."  He explained that he was always buying, selling, and trading items.  Jenkins also testified that the letter he wrote to the Murphrees was not intended as a confession to the burglary.  Jenkins explained that he wrote the letter because his family and the Murphrees were good friends.

¶13.    The jury returned a verdict of guilty against Jenkins for burglary of a dwelling.  The trial court sentenced Jenkins to twenty-five years in the custody of the Mississippi Department of Corrections, with twenty years to serve followed by five years of postrelease supervision.  On January 28, 2015, Jenkins filed a motion for a judgment notwithstanding the verdict or, in the alternative, a motion for a new trial.  The trial court denied the motion, and

Jenkins timely filed his notice of appeal.

¶14.    Jenkins appeals to this Court arguing that the jury verdict was against the overwhelming weight of the evidence.  Finding no error, we affirm.

## STANDARD OF REVIEW

¶15.    The Mississippi Supreme Court has outlined the standard of review when addressing a challenge to the weight of the evidence:

> In reviewing a challenge to the weight of the evidence, this Court will overturn a verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. . . . [T]his Court must view the evidence in the light most favorable to the verdict.  If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial, but this remedy should be used only in exceptional cases where the evidence preponderates heavily against the verdict.

*Warwick v. State*, 179 So. 3d 1069, 1073 (¶13) (Miss. 2015) (internal citations and quotations omitted).

## DISCUSSION

**Whether the verdict was against the overwhelming weight of the evidence.**

¶16.    Jenkins argues that the verdict was against the overwhelming weight of the evidence. In support of this claim, Jenkins argues that he was simply in the wrong place at the wrong time; the State's witnesses had incentives to testify against him to avoid charges; his testimony contradicted the State's witnesses; and Officer Robertson's testimony was not credible.

¶17.    The jury is the sole judge of the weight of the evidence and the credibility of the witnesses. *Williams v. State*, 64 So. 3d 1029, 1033 (¶13)  (Miss. Ct. App. 2011) (citing *Nix*

6

*v. State*, 8 So. 3d 141, 146 (¶26) (Miss. 2009)). As such, conflicts in the testimony are for the jury to resolve. *Id*. Here, the jury heard the conflicts in testimony, rejected Jenkins's testimony, and found him guilty for burglary of a dwelling.

¶18. At trial, the jury heard the State's witnesses testify regarding their own plea deals, reduced charges, and sentences in connection with the burglary of the Murphrees' house. Norwood testified that he and Jenkins burglarized the Murphrees' house. Officer Robertson testified that he determined the cash he gave McGregor to purchase the stolen shotgun from Jenkins was the same cash that was found in Jenkins's possession when he was arrested.

¶19. Armstrong testified that he bought a tablet from Jenkins that was later identified as the Murphrees' tablet. Watts testified that Jenkins brought him a laptop to work on that was later identified as the Murphrees' laptop. Officers discovered a lighter taken from the Murphrees' house in Jenkins's room at Morgan's house. Morgan discovered the Murhprees'.22-caliber rifle at his house where Jenkins was living at the time and turned it over it to the sheriff's department. Furthermore, Jenkins's letter he wrote to the Murphrees, apologizing for "hurting" them and asking for forgiveness, was admitted into evidence.

¶20. After viewing the evidence in the light most favorable to the verdict, we find that the jury's verdict was not against the overwhelming weight of the evidence. Therefore, we affirm the judgment of the circuit court.

¶21. **THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**