# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01159-COA

**MARCUS DEAN LEPARD A/K/A MARCUS LEPARD**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                     **APPELLEE**

DATE OF JUDGMENT:               09/28/2022
TRIAL JUDGE:                    HON. CALEB ELIAS MAY
COURT FROM WHICH APPEALED:      LEAKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         JOHN S. GRANT IV
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:              STEVEN SIMEON KILGORE
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 10/08/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Marcus Lepard, a youth pastor, was charged with fondling one of his Sunday school students between February 2019 and February 2021. Following a trial, the jury found Lepard guilty. The court sentenced him to a term of fifteen years in the custody of the Mississippi Department of Corrections, with three years suspended and twelve years to serve. On appeal, Lepard argues that reversal is required because (1) the circuit court failed to instruct the jury on an essential element of the offense, and (2) the indictment failed to allege an essential element of the offense. After review, we affirm the conviction and sentence.

## PROCEDURAL AND FACTUAL HISTORY

¶2. On October 25, 2021, Marcus Lepard was indicted by a Leake County grand jury for touching a child for a lustful purpose pursuant to Mississippi Code Annotated section 97-5-23 (Supp. 2015). On October 28, 2021, Lepard pled not guilty to the charge set out in the indictment. The matter was then tried in the Leake County Circuit Court on September 15-16, 2022.

¶3. The State first called minor victim C.W.,[1] who was about thirteen years old when the fondling occurred, to testify. In his testimony, C.W. explained that Lepard was his Sunday school teacher at Wake Forest Pentecostal Church in Thomastown, Mississippi. Occasionally, Lepard split the Sunday school class into two separate classrooms based on gender (i.e., boys and girls). C.W. said the boys' class was "more like a sex educational class than it was a Sunday school class." In the split classes, Lepard told the boys "how [their] bod[ies] work" and "how to have sex." C.W. stated that Lepard told the class "not to talk about [the class discussions] around other people . . . period." C.W. knew the classes were "inappropriate" but did not tell his parents about the discussions because he was "embarrassed."

¶4. C.W. testified that Lepard asked C.W. if they could hang out outside of church. C.W. responded, "I don't know. I'll have to talk to my mom." C.W. then testified that "[Lepard] asked [C.W.'s] parents before [C.W.] asked them, and [C.W.'s parents] said it was okay."

¶5. The first time C.W. felt "really uncomfortable" was after a men's church conference

---

[1] Initials have been used for the minor victim C.W. and minor witness A.T. to protect their identities.

in Ridgeland, Mississippi. C.W. and Lepard were driving back in Lepard's car alone when "[Lepard] asked if [Lepard] could go through [C.W.'s] phone and look through [C.W.'s] search history" to see if C.W. has been looking at "porn." C.W. responded, "[A]bsolutely not." After C.W. and Lepard returned from the men's conference, they continued to "hang out" outside of church. They "went to put up corn feeders, and [Lepard] asked [C.W.] one more time if he could go through [C.W.'s] phone. [C.W.] said no."

¶6.     The next time C.W. was at Lepard's house was with his adoptive father. They went to Lepard's house for dinner, and "[Lepard] asked [C.W.'s] dad if [C.W.] could spend the night" "to check feeders the next morning." C.W. testified that his father "said it was fine" to stay the night at Lepard's house. C.W. did not know that Lepard was going to ask his father this in advance.

¶7.     While staying at the house, Lepard wanted C.W. to play "truth or dare." During the course of the game, Lepard dared C.W. to "put ice in [his] underwear," "go outside and pull [his] pants and underwear down," "hump piano chairs," and dared C.W. to hit Lepard "in the nuts." The next morning, "[Lepard] showed [C.W.] a picture of where [C.W.] had [C.W.'s] hand on [C.W.'s] private parts sleeping." While at Lepard's house, Lepard would also "talk about masturbation" and told C.W. "that it was okay as long as [C.W.] wasn't thinking of women or watching porn."

¶8.     Another time at Lepard's house, C.W. testified that Lepard "had a condom, and [Lepard] demonstrated how to put it onto a flashlight." C.W. also testified that Lepard

3

showed him "a ring that goes around your private parts while you're having sex." While C.W. was at Lepard's house Lepard showed C.W. a video of a male's genitals to "teach" C.W. "how to check if your" testicles "have cancer." Lepard also showed C.W. videos "[o]f animals having sex."

¶9.     C.W. testified that the first time he remembered Lepard making him "show [Lepard] [C.W.'s] private parts was in a deer stand" on Lepard's hunting property. While in the deer stand, C.W. had to urinate. Lepard told C.W. "to pee up in the stand," but because of the size of the deer stand, they were only "four inches" apart. C.W. reluctantly decided to relieve himself, and Lepard "starting peeing beside [C.W.]." While urinating, C.W. caught Lepard looking at his genitals. This made C.W. "very uncomfortable."

¶10.    The last time Lepard saw C.W.'s genitals was when Lepard was "teaching" C.W about "when [C.W.'s penis] gets hard and when it gets soft." During this "teaching" Lepard "made [C.W.] pull his pants down . . . and then [Lepard] touched the top of [C.W.'s] private parts" with "two fingers." Lepard touched  "[C.W.'s] penis," and C.W. "pulled [Lepard's] hand off." The touching was "skin on skin" and "not over the clothes." C.W. testified that he "didn't want to[,]" but [Lepard] made [him.]" Shortly after this incident, C.W.'s mother called Lepard because she was ready for him to come home. "[C.W.] said he was ready, but [Lepard] told [C.W.'s mother] that [C.W.] wasn't ready" to come home.

¶11.    C.W. testified that after Lepard "touch[ed] [C.W.'s] penis," he told friends of family about the incident. The family friends "gave [C.W.] three weeks to tell [C.W.'s] parents."

4

C.W. was "super nervous." C.W. "wanted to tell [his] parents. [He] just couldn't go to [his] parents and tell them that." During the three weeks, C.W. also told A.T., a boy in his Sunday school class, but A.T. did not believe him. Once the three weeks were over, the family friends "came, and they made [C.W.] tell" his parents.

¶12.    The State then called C.W.'s mother to testify. C.W.'s mother testified that when she learned that "the Sunday school was being used as a sexual education class," she called Lepard to confront him. Lepard "then cried [a]nd said that that was not his intention and that [C.W.] was told plainly that he was not to come home and tell anything that he learned in those Sunday school classes." After the conversation between C.W.'s mother and Lepard, C.W. did not attend Lepard's Sunday school class again.

¶13.    C.W.'s mother also testified that Lepard "would call and ask if [C.W.] could . . . help him work on deer plots or put up deer stands or work at his house." C.W.'s mother thought this was a "good thing" since "C.W. lives in the house with three other girls" because his father works offshore. She thought Lepard would be a "mentor," a "good leader," and "a good example to [C.W.]." The last time C.W.'s mother allowed C.W. "to go with [Lepard]" was when Lepard "touch[ed] [C.W.'s] penis." C.W.'s mother testified that she was not aware of the incident at the time. However, she did testify that when she picked up C.W., she could "feel an extreme uneasiness with him."

¶14.    After C.W.'s mother became aware of the incidents between Lepard and C.W., Lepard approached C.W.'s mother at church, and Lepard was "crying and said that the Lord had told

[Lepard] if he has done anything to [C.W.'s mother] or [her] family to apologize for that." C.W.'s mother asked "[i]f he knew of anything that he had done," but he failed to answer the question. C.W.'s mother then told the Wake Forest Pentecostal Church's pastor about the incident. The pastor told her he would "conduct an internal investigation." C.W.'s mother did not inform law enforcement immediately because she was "scared of not being believed" and "nothing being pursued." After the pastor gave C.W.'s mother "his blessing," she informed law enforcement.

¶15.  The State also called A.T., another one of Lepard's Sunday school students to testify. In his testimony, he explained that he encountered a progression of several inappropriate instances with Lepard that made A.T. feel "uncomfortable." While at Lepard's hunting property, Lepard asked A.T. to play "truth or dare." During the game, Lepard dared A.T. "to take off [his] pants." On a separate occasion at the hunting property, Lepard "asked [A.T.] to show [his] privates in front of the deer camera," which "should snap a picture." Lepard also testified that Lepard taught him about condoms and "cock rings." A.T. then explained how the touchings escalated. Lepard "asked [A.T.] to" masturbate while Lepard stood beside and watched until A.T. "finished." Other incidents occurred where Lepard would "[masturbate] as well, and he asked [A.T.] to hold his private area." Lastly, while A.T. was at Lepard's house, A.T. was taking a shower, and Lepard "joined [A.T.] in the shower" and "shaved [A.T.'s] private area."

¶16.  The State also called Mississippi Bureau of Investigation Investigator Ricky Dean to

testify. Dean testified that on May 13, 2021, he interviewed Lepard. The interview was recorded and, after objections and redactions, shown to the jury. During the recorded interview, Lepard never admitted to intentionally touching C.W.'s genitalia. However, Dean explained that during the interview, Lepard remembered grabbing C.W. near the groin area when they would wrestle. When asked whether Lepard used thoughts of the wresting interaction with C.W. to facilitate an orgasm, he responded, "It's very possible." Lepard also stated that he "may have thought about" sexual conduct with C.W. Lastly, when Dean asked whether Lepard's "actions were gratifying the lust of the flesh," Lepard responded by saying, "In all honesty yes, sir."

¶17. Lastly, the State called Deputy Warden Steven Bell of the Walnut Grove Correctional Facility. At the time of the relevant events, Bell was an investigator for the Leake County Sheriff's Office and interviewed Lepard. In the interview, Lepard stated that he had shown C.W. "how to put a condom on a flashlight," "a cock ring," and "pornographic images," and Lepard said he "exposed himself to C.W. several times while urinating." Bell also testified that in the interview, Lepard admitted to "masturbat[ing] to the image of himself touching C.W.'s penis."

¶18. At the end of trial, the State proposed the following jury instruction:

> The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that on or between February 2019 and February 2021, in Leake County, Mississippi, the Defendant, Marcus Dean Lepard, **willfully, unlawfully and feloniously did touch the person** of C.W., a child under the age of sixteen (16) years, for the purpose of gratifying his lust and indulging in his depraved licentious sexual desires, at a time when he, the said

7

Marcus Dean Lepard, was a person above the age of eighteen (18) years, then it is your duty to find the Defendant guilty as charged.

(Emphasis added).

¶19.    Lepard's counsel objected that the instruction was missing the essential element that describes "what part of Marcus Lepard's the State alleges he touched the body of C.W. with." The judge overruled this objection and asked defense counsel, "What authority do you have that we have to get so specific as to talk about what part of the body was touched[?]" The defense attorney responded that pursuant to Mississippi Code Annotated section 97-5-23(1) the touching must be done "with hands or any part of his or her body or any member thereof." The judge again overruled the objection because he disagreed "with [the defense attorney's] objection based on the wording of the statute."

¶20.    The jury found Lepard guilty as charged. On September 19, 2022, the judge sentenced Lepard to fifteen years in the custody of the Mississippi Department of Corrections, with three years suspended and twelve years to serve, and three years of post-release supervision. Lepard was also ordered to register as a sex offender upon release. On October 7, 2022, Lepard appealed.

## ANALYSIS

I.    **The jury was adequately instructed on the essential elements of fondling.**

¶21.    Lepard argues the jury instructions were missing an essential element of the applicable statute by not stating the touching had to be done "with hands or any part of his or her body

8

or any member thereof, or with any object" Lepard argues that this element is essential to the crime and must be included in the jury instructions because it is the only element that ensures the touching is physical.

¶22. "It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010). When reviewing challenge to a jury instruction on appeal, we do "not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012).

¶23. The Mississippi Supreme Court has clearly held that the State has the responsibility "for making sure the jury is instructed on the essential elements of the crime." *Harrell v. State*, 134 So. 3d 266, 270 (¶14) (Miss. 2014) (citing *Hunter v. State*, 684 So. 2d 625, 635 (Miss.1996)). Furthermore, "[i]t is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." *Id*.

¶24. Caselaw states that pursuant to Mississippi Code Annotated section 97-5-23(1) the "elements of child fondling includ[e] (1) a handling or touching or rubbing; (2) of a child

under the age of [16] years;[2] (3) by a person above the age of 18; and (4) for purposes of gratifying lust or indulging licentious sexual desires." *Hailey v. State*, 537 So. 2d 411, 414 (Miss. 1988); *see also State v. Shaw*, 880 So. 2d 296, 300 (¶13) (Miss. 2004); *Nix v. State*, 8 So. 3d 141, 144 (¶15) (Miss. 2009).

¶25.     The issue in this case is whether the exact location of the touching and the exact part of Lepard's body that performed the touching are essential elements of the offense. There is no case directly aligned with this question, but this Court has addressed a similar issue relating to the sexual battery statute. In *Chandler v. State*, 789 So. 2d 109 (Miss. Ct. App. 2001), Chandler was charged with sexual battery of a five-year-old girl by digital penetration. *Id.* at 110 (¶1). At trial, the State amended the indictment by eliminating the "digital penetration" language because the evidence "pointed to acts of fellatio rather than digital penetration." *Id*. at 111 (¶3). The relevant portion of the indictment, with the eliminated portions stricken, stated that Chandler

> did wilfully, unlawfully and feloniously engage in sexual penetration of [the victim], a female child under the age of fourteen years, contrary to and in violation of § 97-3-95 [(1)](d) of the Mississippi Code . . . .

*Id.* at 110 (¶3). Chandler appealed and argued that the eliminated portion of the indictment was substantive, and he was required to "defend a broader charge of sexual penetration rather than the specific charge of digital penetration." *Id*. at 111 (¶5). This Court held that the State's amendment to eliminate the reference of "digital penetration" in the indictment was

---

² The statute was amended in 1998 to raise the age from fourteen to sixteen. 1998 Miss. Laws ch. 549, § 5 (H.B. 834).

proper because "[p]enetration is the essence of the crime of sexual battery," and "**[t]he method of achieving sexual penetration is not an element of the offense.**" *Id.* at 112 (¶7) (emphasis added).

¶26.    This Court cited *Chandler* in another case where a defendant was charged and found guilty of five counts of sexual battery and four counts of child fondling. *Mendez v. State*, 309 So. 3d 1109, 1111 (¶1) (Miss. Ct. App. 2020). He appealed and raised the issue of whether his indictment was defective because the State "did not charge an essential element of the crime of sexual battery." *Id.* The indictment stated he sexually penetrated the victim "by placing his anus to [the child's] finger" and "his mouth to [the child's] penis." *Id.* at 1116 (¶29).  Mendez argued that the indictment was insufficient because of the use of the word "to" instead of "into." *Id.* This Court found that "it does not matter whether the indictment should have stated that Mendez achieved sexual penetration by forcing the child's penis *into* his mouth or by forcing the child's finger *into* his anus/rectum because that is not an element of the offense charged." *Id.* at 1115-16 (¶29). We held that the indictment was sufficient. *Id.*

¶27.    The Mississippi Supreme Court has reached similar conclusions relating to the sexual battery statute.  In *Hennington v. State*, 702 So. 2d 403 (Miss. 1997), Hennington was convicted of sexual battery of a ten-year-old male. The indictment charged Hennington with "sexual penetration **of** [the victim] a male person under the age of fourteen years, by then and there wilfully, unlawfully and feloniously putting his mouth and hands **on** the penis." *Id.* at 407 (emphasis added). On appeal, he argued that the State failed to prove that the victim was

11

penetrated by the act of fellatio. *Id.* He claimed "that the indictment charged him with penetration 'of' a child, instead of penetration 'with' a child." *Id.* The Mississippi Supreme Court held that "[w]hether there was penetration 'of' or penetration 'with' [the victim] is not an essential element of the crime and is not relevant." *Id.* at 408. Therefore, the State proved beyond a reasonable doubt that Hennington penetrated the victim and was guilty of sexual battery. *Id.*

¶28.    In another case this year, a defendant was found guilty of sexual battery of his two nieces. *Stewart v. State*, 378 So. 3d 379, 381 (¶1) (Miss. 2024). The defendant, Stewart, was indicted on two counts of sexual battery, one for each niece. *Id.* at 383 (¶12). The indictment alleged that Stewart penetrated each niece "by three different means—by vaginal, anal, and oral penetration." *Id.* at 382 (¶3). At trial, one niece testified that "Stewart put his penis in her vagina, her butt, and her mouth." *Id.* at 383 (¶14). However, the other niece testified that "Stewart put his penis into her vagina and her butt," but did not testify as to any oral penetration. *Id.* On appeal, Stewart claimed that the jury instructions insufficiently described sexual penetration as "inserting his penis into her vaginal, anal and oral *areas*" rather than "genital or anal openings" pursuant to Mississippi Code Annotated section 97-3-97(a). *Id.* at 387 (¶32). He argued that a mere touching is not enough for sexual penetration to occur. *Id.* Stewart also argued that the proof was insufficient since there was no evidence presented at trial that "he engaged in oral penetration of [one niece] or that he penetrated either [niece's] anus." *Id.* at 386 (¶26). The Mississippi Supreme Court stated that the sexual battery

12

statute lists a number of ways in which penetration can occur, including "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." *Id.* at 387. The Supreme Court held that in order "to commit sexual penetration, one does not have to engage in all the activities listed in section 97-3-97(a). *Id.* Just one of those activities will suffice." *Id.* Thus, the Court found that there was no reversible error because "the jury instructions, read as a whole, fairly announce the law of the case and create no injustice." *Id.* at 388 (¶32).

¶29.    Here, the elements of fondling, among others, are a handling, touching, or rubbing of a child with a lustful purpose. *See* Miss. Code Ann. § 97-5-23(1). The statute states the handling, touching, or rubbing must be done "with **hands** or **any part of** his or her **body** or **any member thereof**, or with **any object**[.]" *Id.* (emphasis added). The phrase "with hands or any part of his or her body or any member thereof, or with any object" makes the statute clear that any lustful touching is illegal.  In sexual battery, any penetration of a child is prohibited, and the "method of achieving" the penetration, while required to be proved by a reasonable doubt, is not an essential element for purposes of the jury instructions. *See Chandler*, 789 So. 2d at 113 (¶7). The same logic applies here; the fondling statute prohibits any touching of a child for a lustful purpose, and the "method of achieving" that touching, while required to be proved beyond by a reasonable doubt, is not an essential element for purposes of the jury instructions. Again, the phrase "with hands or any part of his or her body

13

or any member thereof, or with any object" makes the statute clear that all lustful touchings are illegal. It matters not whether it is done with the hand, body, or any object because any touching with any member of the body is prohibited. Thus, that phrase is not an essential element. That phrase defines the method of achievement of the illegal handling, touching, or rubbing. As such, just like previous interpretations of the sexual battery statute, that phrase is not the essential element. The essential element is the "handling, touching, or rubbing."[3]

¶30. We find that the jury instructions were sufficient, and there was no abuse of discretion. When read as a whole, the instructions fairly state the essential elements of fondling and create no injustice for Lepard. *See Burton*, 615 So. 2d at 583. Even though the instructions did not include the method of achieving the illegal touch, the fact C.W. testified that Lepard "made [C.W.] pull his pants down" and "touched the top of [C.W.'s] private parts" with his "two fingers" proves that the touching was physical. There was no other alleged illegal touching. The jury obviously found that Lepard (1) touched (2) C.W., a child under the age of 16 years, (3) was above the age of 18, and did so (4) for purposes of gratifying his lust or indulging licentious sexual desires, which are the essential elements the supreme court set out in *Hailey*, 537 So. 2d 414, *Shaw*, 880 So. 2d at 300 (¶13), and *Nix*, 8 So. 3d at 144 (¶15). This argument is without merit.

## II.    The indictment was legally sufficient.

---

[3] It certainly would be good practice to set out the manner in which the "handling, touching, or rubbing" occurred in the indictment and jury instructions, but it is not essential.

¶31.    Lepard also argues that his indictment was insufficient for failing to include the same alleged "essential element" addressed in the first issue. "The question of whether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review, by the [appellate] court." *Tapper v. State*, 47 So. 3d 95, 100 (¶17) (Miss. 2010).

¶32.    Mississippi Rule of Criminal Procedure 14.1(a)(1) states:

[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.

The rule mandates that the indictment also include:

(A) the name of the accused;
(B) the date on which the indictment was filed in court;
(C) a statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
(D) the county and, in two-district counties, the judicial district in which the indictment is brought;
(E) the date and, if applicable, the time at which the offense was alleged to have been committed;
(F) the signature of the foreperson of the grand jury issuing it; and
(G) the words "against the peace and dignity of the state."

MRCrP 14.1(a)(1). "The primary purpose of an indictment is to give the defendant **fair notice** of the crime charged. It must contain the essential facts constituting the offense charged and shall fully notify the defendant of **the nature and cause of the accusation**." *Faulkner v. State*, 109 So. 3d 142, 146 (¶13) (Miss. Ct. App. 2013) (emphasis added)

15

(internal quotation marks omitted). "An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

¶33. In the case at hand, the indictment stated:

> Marcus Dean Lepard in Leake County, Mississippi, on or between February, 2019 and February, 2021 did willfully, unlawfully, and **feloniously touch** the person of C.[]W., **a child under the age of sixteen (16) years** of age, **for the purpose of gratifying his lust and indulging in his depraved licentious sexual desires**, at a time when he, the said Marcus Dean Lepard, was a **person above the age of eighteen (18) years** of age, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added).

¶34. The indictment is legally sufficient because it has all of the essential elements of fondling. *See Hailey*, 537 So. 2d at 414; *Shaw*, 880 So. 2d at 300 (¶13); *Nix*, 8 So. 3d at 144 (¶¶14-15). Lepard was above the age of eighteen years, and C.W. was a child under the age of sixteen. Lepard was charged with willfully, unlawfully, and feloniously touching C.W. The touching was allegedly for the purpose of "gratifying [Lepard's] lust and indulging his depraved licentious sexual desires." The only part of section 97-5-23 not specifically included in the indictment was "with hands or any part of his or her body or any member thereof, or with any object." As stated previously in the cases of *Steward*, *Chandler*, and *Hennington*, concerning the essential elements of sexual battery, pursuant to section 97-3-95,

16

the essential element of the crime is the penetration not the "method of achieving" that penetration. *Stewart*, 378 So. 3d at 380 (¶30); *Chandler*, 789 So. 2d at 110 (¶7); *Hennington* 702 So. 2d at 406. In sexual battery cases, it has been held in those cases that the indictment and jury instructions do not require the "method of achieving" the penetration. Likewise, the fondling statute does not require the method of achieving the touching because the touching is the essential element of the crime. The fondling statute clearly prohibited all lustful touching, and that is the essential element of the crime, not the method of achieving the touching. The indictment fairly informed Lepard of the fondling charge against him. Thus, Lepard had fair notice of the crime charged. This issue is without merit.

## CONCLUSION

¶35. Following a thorough review, we find that the jury instruction and indictment were sufficient. The fact that the instruction did not include the method of achieving the lustful touch did not make the instructions insufficient because it is not an essential element. The essence of fondling is the illegal touching, not the method of achievement. We find no abuse of discretion. Furthermore, we find the indictment was not fatally defective because it included all the essential elements and provided Lepard with sufficient notice of the fondling charge.

¶36. Finding no reversible error, we affirm Lepard's conviction and sentence.

¶37. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

17